Keith Anthony TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00091–CR.

Court of Appeals of Texas, San Antonio.

March 3, 1982.

Robert E. Kozlowski, Sr., San Antonio, for appellant.

Bill White, Dist. Atty., Peter A. Sakai, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C. J., and BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for the offense of burglary of a building. After returning its verdict of guilty, the jury found the allegations of the two enhancement paragraphs true, and the trial court assessed punishment at life imprisonment. We affirm the judgment.

In his first two grounds of error appellant challenges the sufficiency of the evidence. He argues that his motion for instructed verdict should have been granted because the State failed to prove the offense of burglary of a building [1] and that the accomplice testimony was not corroborated, specifically, that no evidence supported the State's contention that appellant and the accomplice witness were "partners."

Police Officer Ralph McGehee, patrolling near the Ella Austin Community Center on North Pine Street in San Antonio, respond-

---

1. Tex.Penal Code Ann. § 30.02(a)(1) (Vernon 1974) provides: A person commits an offense if, without the effective consent of the owner, he enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft.

ed to a call of a possible burglary at the Center about 5:15 a. m., February 12, 1979. A second officer answered the call, and they parked their patrol cars after they observed parked nearby a dark-colored Pontiac with the license number given them by the dispatcher.

The Center, owned by the city of San Antonio, operates as a government-funded program for children and the elderly, and is a series of buildings. On February 12, 1979, extensive remodeling was being done. At that time there were a one-story gymnasium, a one-story kitchen-cafeteria, classrooms, and the main building, which had two floors. Surrounding the large area was a four-foot chain link fence, which was "makeshift" in places. The record discloses that the first floor and part of the second floor of the main building were being remodeled and, thus, completely locked off from that part of the second floor utilized by the Center. A contractor controlled exclusively the security of the bottom floor and part of the second floor. In addition, he had fenced that portion of the yard which opened off the main building on the west side. Tools, equipment, and building supplies were secured in this fenced-in area, with no access to anyone except the contractor.

McGehee testified that the two officers heard sounds of "voices, banging and walking" when they reached the corner of the gym as they approached on foot. Pulling their service revolvers, they walked toward the kitchen. Some shots were fired in their direction, one of them striking McGehee in the left hand.

Officer Max Parkinson, among many officers who arrived, testified he saw two individuals, each in a different area by the main building. The first stood directly below an open window, from which Parkinson had seen him emerge. The second person, appellant, stood under a tree by a staircase at the main building on the west side. Apprehended in the fenced storage area of the contractor, appellant could not get out. Appellant shouted that he wanted out and

did not want to be shot. The officers lifted him over the fence since he was disabled. His shoulder was dislocated, and as officer Parkinson stated, "hanging out of socket." Appellant related he had jumped off the roof. No weapon was found on or near the appellant. Officer Gary West stated that the first time he saw the appellant he was outside the main building. He stated that the door into the building at the steps was locked, and no window was open.

■ Appellant contends that because the director for the Center who testified, did not have the keys nor access to the contractor's portion of the building and storage yard, he was not an "owner" within the meaning of the burglary statute. Thus, he argues, the evidence of that essential element of the offense was insufficient.

Tex.Penal Code Ann. § 1.07(a)(24) (Vernon 1974) defines "owner" as "a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

The record discloses that the director of the Center, Marvin Adams, had managed in the past, and would again manage in the future, the entire building and outside area where appellant was discovered. Further, he was the executive director and the employee of the title owner, the City of San Antonio. We find that the director had a greater right to possession of the property than the appellant, and we hold he was an "owner" as contemplated by the statute. *Compton v. State*, 607 S.W.2d 246, 250–251 (Tex.Cr.App.1980).

■ We now consider the concurrent activities of appellant's two co-defendants. Officer West observed Beldon Bell coming out a window of the main building. Moreover, the record reveals that Nelson Carey was dislodged by officers from the suspended ceiling inside the kitchen. Testimony of officers disclosed that a window had been broken to effect entry into that building.

Carey was the accomplice witness.[2] He stated he had been to a wedding on the 11th

2. Tex.Code Crim.Pro.Ann. art. 38.14 (Vernon    1966) provides that a conviction cannot be had

of February, where he had done some "drinking." After that he met Bell and appellant. The three of them drove to the Center in Carey's car and parked down the street from it. He testified he was unable to remember what the other two did or where they went. He admitted arriving at the Center about 2:00 or 3:00 a. m. He stated he had entered a plea of guilty in the same burglary case.

The court charged the jury on the law of circumstantial evidence and accomplice witness. The testimony showed that appellant was found outside the building with a dislocated shoulder and locked in the secured area which he could not have entered by door, window, or fence. At the same time, his co-defendants were caught in unmistakably burglarious circumstances. They were all arrested on Center property.

"Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for such presence, being in the company of an accomplice witness, and subsequent flight, furnishes sufficient corroboration to support a conviction." *Edwards v. State*, 427 S.W.2d 629, 633 (Tex.Cr.App.1968), cited in *Rodriguez v. State*, 508 S.W.2d 80, 83 (Tex.Cr.App.1974). *See Passmore v. State*, 617 S.W.2d 682, 685 (Tex.Cr.App.1981). In the instant case the accomplice testimony was sufficiently corroborated.

■■■ The court, in addition, charged the jury on the law of criminal responsibility as a party.[3] A party may be guilty of burglary even though he has not personally entered the burglarized premises if he is acting together with another in the commission of the offense. *Clark v. State*, 543 S.W.2d 125, 127 (Tex.Cr.App.1976). Some of the circumstances which the jury could

consider in this case were the "voices, banging, and walking" heard by the first two officers, the fact that no intruders other than appellant, Carey, and Bell were discovered, and the removal of appellant by the police from the storage area which had no entrance or exit. They learned appellant suffered a dislocated shoulder, and appellant stated he received it in a fall from the roof. Further, they could consider that it was nighttime, and the Center was closed. The incriminating evidence gleaned from the accomplice witness' testimony placed appellant with Carey and Bell in Carey's car in the nighttime near the Center. The most incriminating evidence, as noted above, occurred at the scene. In determining whether one has participated as a party, the trial court may look to events occurring before, during and after the commission of the offense and reliance may be placed on actions of the parties which show an understanding and common design to do a certain act. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Cr.App.1978). Further, it is well established that the specific intent to commit theft can be inferred from the circumstances. *Simmons v. State*, 590 S.W.2d 137, 138 (Tex.Cr.App.1979). Viewing the evidence in the light most favorable to the jury's verdict we conclude that the circumstances exclude every reasonable hypothesis except that of appellant's guilt and that the proof is sufficient to support the verdict. *Thompson v. State*, 563 S.W.2d 247, 250 (Tex.Cr.App.1978). The two grounds of error are overruled.

In his third ground of error appellant asserts fundamental error in the charge to the jury, which stated, in pertinent part:

Now, if you find from the evidence beyond a reasonable doubt that [defendant] ... did either acting alone or together with another as a party, enter a building

---

upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

**3.** Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974) states: "A person is criminally responsi-

ble for an offense committed by the conduct of another if ... acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense...."

not then open to the public ... without the effective consent of said owner, and that the defendant, at the time of such entry, if any there was, had the intent then and there to take and exercise control over the property therein being owned and belonging to said owner, without the effective consent of said owner, with intent to deprive the owner of said property, then you will find defendant guilty.

In the abstract portion of the charge the court defined "theft." The indictment in the case simply tracked the burglary statute, *supra*, and alleged that entry was made "with the intent to commit theft."

Appellant avers there is fatal variance between the allegation of theft in the indictment and that in the portion of the jury charge which applies the law to the facts. We do not agree.

■■ It is not necessary for the court's charge, in applying the law to the facts of a burglary case, to set out the constituent elements of theft when theft is defined in the abstract portion of the charge. If, however, the court does charge the component elements of theft in applying the law to the facts, as here, it must include each and every element to avoid error. *See*, e.g., *Williams v. State*, 622 S.W.2d 95, 96 (Tex. Cr.App.1981), *Bradley v. State*, 560 S.W.2d 650, 652 (Tex.Cr.App.1978). In applying the law to the facts of the instant case, the trial court correctly set out the constituent elements of theft. The ground of error is overruled.

■ In his fourth ground of error appellant argues that use of his previous conviction for robbery by assault with firearms, wherein the penalty could properly have been assessed at life imprisonment or death, to enhance the instant sentence[4] violates his constitutional guarantee against double jeopardy. He asserts that he was twice placed in jeopardy for the same offense.

We find the ground of error to be without merit. The Court of Criminal Appeals rejected this contention in *Thomas v. State*, 543 S.W.2d 645, 647 (Tex.Cr.App.1976), and in earlier cases cited therein, and held that the utilization of the enhancement statute does not place a defendant in double jeopardy by use of prior convictions to enhance punishment. The ground of error is without merit.

The judgment is affirmed.

4. Tex.Penal Code Ann. § 12.42(d) (Vernon 1974) states that if it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life.