Sterling ALLEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–83–0146–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 13, 1985.

Mark Stevens, San Antonio, for appellant.

Sam Oatman, Criminal Dist. Atty's Office, Llano, for appellee.

Before CADENA, C.J., and REEVES and TIJERINA, JJ.

## OPINION

TIJERINA, Justice.

Appellant was convicted of the felony offense of theft. The jury assessed punishment at eight years' confinement in the Texas Department of Corrections.

In his first ground of error, appellant alleges that the evidence is insufficient to prove beyond a reasonable doubt that he, acting either alone or as a party, unlawfully appropriated money from Diane McCrohan as charged in the indictment.

When a challenge is made to the sufficiency of the evidence, the standard for review in both direct and circumstantial evidence cases is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984). And in reviewing the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict. *Id.* Attentive to these legal principles, we find the record reveals that the following evidence was produced by the State.

The complainant, Diane McCrohan, was the sole clerk working at the Nu-Way grocery store in Mason on the date of the alleged offense. At approximately 4:00 P.M., a car containing four black males stopped and two men exited from the vehicle. One of the men was appellant and the other man was Donald Dents. McCrohan was alone in the store when appellant and Dents entered. Appellant asked her for change. As McCrohan attempted to comply with his request, appellant began rapidly producing more money and requesting change. When appellant refused McCrohan's request to slow down, she shut the cash register drawer and said "No" to his requests. Appellant then told McCrohan that he wanted some mixed cartons of soft drinks. To comply with this request, McCrohan left the cash register-counter area and proceeded to the back of the store where a walk-in cooler was located. Appellant followed her. When she opened the cooler door and entered, appellant also entered. As McCrohan started mixing soft drinks, appellant kept changing his mind as to which ones he wanted. Through the glass on the cooler she saw Dents walk behind the counter at the front of the store. She told appellant that she had to get back to the front of the store and for him to mix his own drinks. Appellant told her, "No, you are going to fix the drinks." He kept repeating this and she became frightened. When McCrohan again told appellant she had to get back to the front of the store and started to leave, appellant grabbed her and threw her against a stack of soft drinks. Appellant then began dancing around as if to block her exit and told her to fix the mixed soft drinks. She finally managed to get through the door and out of the cooler. As she exited the cooler, she observed Dents walk back around to the front of the counter. Appellant followed McCrohan and kept talking to her about mixing drinks. After McCrohan returned to the counter, Dents paid McCrohan for a hat, appellant purchased a six pack of one brand of soft drinks, and then both men returned to the car. Believing something was wrong, McCrohan asked a customer who entered the store, Randy Leifeste, to get the car's license number; Leifeste complied. Immediately she examined the cash register drawer, which did not appear to have been disturbed. She then looked for her purse. It was not on a shelf under the counter where she had placed it around 1:00 P.M. that day. She then observed her

purse, lying unzipped at the opposite end of the counter. Her wallet, containing approximately two hundred and fifty dollars in currency, was missing from the purse. McCrohan explained she had cashed her husband's check in the amount of two hundred and five dollars around noon that day. In addition to this money, she had forty-five dollars of her own in the wallet. She gave neither appellant nor anyone else permission to take the money or her wallet. In response to questioning, McCrohan stated that neither appellant nor his companion could have seen the purse while standing in front of the counter.

After discovering that her wallet was missing, McCrohan contacted the Mason County Sheriff's Department and reported the incident. She gave a description of the car, the car's license number, and a description of the occupants. This information was relayed by radio to Deputy Brown of the McCullough County Sheriff's Department and to Brady police officer Jerry Whisenhunt. The information relayed also noted the vehicle was traveling north on Highway 87 from Mason towards Brady.

Officers Brown and Whisenhunt spotted the vehicle traveling north on Highway 87. The vehicle turned onto Highway 71 and was stopped by both officers. Other officers arrived and the four men exited the vehicle. The driver was a man named Taffy. A second man, Henderson, stated that the car belonged to his brother, which statement the officers verified. The last two men were Donald Dents and appellant. Appellant identified himself to the officers as Johnny White. Approximately three hundred and ninety-two dollars in folding currency was found in Dents' pocket. Less than fifty dollars in currency was found on appellant. An undisclosed amount of money was found on the vehicle's interior floor.

John Hudnutt, Diane McCrohan's father, testified that he found his daughter's wallet the next day. The wallet was found in a ditch alongside Highway 87 going north from Mason. Except for a hidden two dollar bill, the wallet contained no money.

In its charge to the jury, the court abstractly defined the applicable provisions of the law of parties to the offense and criminal responsibility for conduct of another. *See* TEX.PENAL CODE ANN. §§ 7.01(a) and 7.02(a)(2) (Vernon 1974).

While mere presence at the scene of the commission of the offense will not make one a party, it is a circumstance tending to prove that a person is a party and, taken with other facts, may be sufficient to show that the accused was a participant. *Medellin v. State*, 617 S.W.2d 229 (Tex.Crim.App.1981). In determining whether a person was a participant in an offense, the courts may look to events occurring before, during, and after commission of the offense, including actions which show an understanding and common design to do a certain act. *Harris v. State*, 645 S.W.2d 447, 457–58 (Tex.Crim.App.1983); *Taylor v. State*, 630 S.W.2d 469, 472 (Tex. App.—San Antonio, 1982, no pet.). In this case the State did not prove the essential elements of the offense beyond a reasonable doubt. There is no direct evidence that appellant took the money from the complaining witness' purse, and there is no direct evidence that he solicited, encouraged, directed, aided or attempted to aid the other person to commit the offense. Consequently, appellant's guilt as a principal or a party was not established. Proof beyond a reasonable doubt is essential under the due process clause of the Fourteenth Amendment. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "When such a conviction [obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a State trial, it cannot constitutionally stand." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781–2789, 61 L.Ed.2d 560 (1979).

The trial court charged the jury on the law of parties under TEX.PENAL CODE ANN. § 7.02(a)(2), and on circumstantial evidence. Direct and circumstantial evidence are to be treated with equal dignity. *Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1983). In *Denby v.*

*State,* 654 S.W.2d 457 (Tex.Crim.App.1983), the Court of Criminal Appeals addressed a question on the standard of review in circumstantial evidence cases, stating: "If the State's evidence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could *rationally* find the accused guilty *beyond a reasonable doubt.*" This decision requires Texas courts to continue using the "exclusion of outstanding reasonable hypotheses" test. *Id.* at 464. In the instant case the State's evidence relevant to this issue is as follows: (1) The complaining witness cashed her husband's check for two hundred five dollars at 12:00 o'clock noon and placed the money in her wallet; she had an additional forty-five dollars; the wallet was in her purse which was left on a shelf under the counter at approximately 1:00 P.M.; (2) The complaining witness testified that she could have used the purse to obtain coins to buy a soft drink sometime between 1:00 P.M. and 4:00 P.M.; (3) Appellant and his companions were on the business premises at 4:00 P.M.; (4) There is no evidence that appellant or any of his companions took the wallet; (5) There was no testimony indicating that appellant and his companions were the only customers to visit the store between 1:00 P.M. and 4:00 P.M.; (6) The money found in appellant's possession and in his companion's possession was not identified; (7) There was no physical evidence such as fingerprints. The State's proof amounts at most to a strong suspicion or mere probability to connect appellant to the offense charged which is not sufficient to sustain the conviction. *See Wilson v. State,* 654 S.W.2d 465 (Tex. Crim.App.1983); *Autry v. State,* 626 S.W.2d 758, 761 (Tex.Crim.App.1982). Thus, we find the circumstantial evidence to be insufficient and that it does not exclude every reasonable hypothesis except the guilt of appellant. Accordingly, we sustain the assignment of error.

The second ground of error alleges that the charge to the jury was fundamentally defective because it failed to include a form for a "not guilty" verdict.

Pursuant to our order, a supplemental transcript has been prepared and filed in this court which reveals that a "not guilty" verdict form was in fact included in the charge submitted to the jury. Additionally, where no objection to the charge or request for such a charge or form is made, as in the case before us, the omission of a "not guilty" verdict form from the charge does not constitute reversible error. *Berghahn v. State,* 683 S.W.2d 697 (Tex. Crim.App.1984). Appellant's second ground of error is overruled.

Appellant's third ground of error alleges that the trial court's charge to the jury on the law of parties is fundamentally defective because it impermissibly shifted the burden of proof from the State to appellant. Particularly, appellant points to paragraph six of the charge which reads as follows:

> The mere presence of Defendant, STERLING ALLEN, at the scene of the theft, if any, would not constitute him a party to the offense charged, and if you should find from the evidence beyond a reasonable doubt that said Defendant did not act with intent to promote or assist the commission of the offense of theft, if any, by encouraging, soliciting, directing, aiding, or attempting to aid another in the commission of said offense, then you will find Defendant, STERLING ALLEN, not guilty.

Appellant neither objected to the charge nor specially request a charge. In the absence of objections to the charge or a specially requested charge, no error therein can be considered on appeal unless it appears that the error was calculated to injure the defendant's rights or prevent a fair and impartial trial. *See Grady v. State,* 614 S.W.2d 830, 831 (Tex.Crim.App. 1981). "Fundamental error is presented where the error in the court's instructions to the jury goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted." *Martinez v. State,* 576 S.W.2d 854, 855 (Tex.Crim.App.1979). In determining whether fundamental error is

present, it is proper to view the charge as a whole. *See White v. State*, 610 S.W.2d 504, 507 (Tex.Crim.App.1981).

In the instant cause, the very basis of the case to which the court's charge had to conform necessarily involved an application of the law of parties. This is so because the circumstantial evidence, previously discussed herein, reveals that appellant, if guilty at all, was guilty only as a party to the offense. The complainant readily admitted that appellant could not have personally removed the wallet from her purse. Appellant's guilt hinged upon the State proving facts and circumstances which would establish his participation in the offense. Although the court's charge only abstractly defined the law of parties, and did not apply the same to the facts of the case, the charge enlarged appellant's criminal responsibility and benefited the State. *See generally Romo v. State*, 568 S.W.2d 298 (Tex.Crim.App.1978) (On State's Motion for Rehearing). When the State relies on the theory of parties, as it did here, it is the State's burden to present evidence showing that the defendant acted with intent to promote or assist in commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in its commission. *See Gordon v. State*, 640 S.W.2d 743, 758 (Tex. App.—San Antonio 1982, no pet.). A reading of paragraph six reveals that it shifted the burden of proof from the State to appellant on that which formed the very basis of the case, criminal responsibility. As to appellant's criminal responsibility, a not guilty verdict was authorized, under paragraph six, if the jury found from the evidence *beyond a reasonable doubt that appellant had not acted with intent to promote or assist the commission of the offense* by encouraging, soliciting, directing, aiding, or attempting to aid another in its commission.

Viewing the charge as a whole, the harmful effect of the error contained in paragraph six is obvious. As was noted previously herein, the charge only abstractly defined parties to the offense and criminal responsibility. The charge did not apply the law of parties to the facts of the case. Thus, paragraph six was the only instruction in the entire charge which specifically addressed appellant's criminal responsibility for the alleged theft, the very basis of the case on which the charge should have required the State to prove beyond a reasonable doubt.

In criminal cases, the constitutionally required burden of proof is that the State establish all elements of the offense beyond a reasonable doubt. *See Crocker v. State*, 573 S.W.2d 190, 207 (Tex.Crim. App.1978) (On Rehearing), and cases cited therein. A shift in the burden of proof of an essential element of the crime rises to constitutional proportions and renders the trial fundamentally unfair. *See Smith v. Smith*, 454 F.2d 572, 579 (5th Cir.1971), *cert. denied*, 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972). Because paragraph six shifted the burden of proof on criminal responsibility, the very basis of the case, to appellant, the charge prejudiced appellant's rights to a fair trial and is fundamentally defective.

Accordingly, appellant's third ground of error is sustained. This cause is reversed and the trial court is directed to enter a judgment of acquittal. *See Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

CADENA, Chief Justice, concurring in part; dissenting in part.

I would reverse the judgment because of the fundamentally erroneous charge which, in effect, required appellant to prove his innocence beyond a reasonable doubt. Since I cannot agree that the evidence is insufficient, I would not order the entry of an order of acquittal, but would remand the cause for a new trial.

The court's opinion, after following the customary practice of referring to the various formulae to be used in determining the sufficiency of the evidence, purports to detail "the State's evidence relevant to this issue ..." Presumably, the phrase "this

issue" refers to the "exclusion of reasonable hypotheses" test.

The review of the evidence is unusually selective. This review may be summarized, insofar as it is relevant, as follows:

1. At approximately 1:00 P.M., McCrohan placed her purse, containing the wallet with approximately $250.00 in cash, under the counter. This is undisputed.

2. There is no evidence that appellant and his companion, Dents, were the only customers who had been in the store between 1:00 P.M. and 4:00 P.M., when the theft of the wallet was discovered.

3. There is no evidence that appellant or Dents took the wallet.

4. The money found in the possession of appellant and Dents was not identified.

5. There is no fingerprint evidence.

The summary, insofar as evidence of guilt is concerned, of course supports the conclusion that it raises no more than a strong suspicion of guilt. In fact, if we accept the summary as accurate, there may not even be grounds for suspicion. But if, as we must, we consider the entire record, the strange nature of the summary is revealed and, if we view the entire evidence in the light most favorable to the verdict, the conclusion that it raises only a "strong suspicion" is exposed as untenable.

Each part of the summary must be evaluated in the light of all of the evidence.

1. *Location of the purse.* It is true that McCrohan placed her purse under the counter at 1:00 P.M., some three hours before Dents and appellant entered the store. The evidence establishes that the purse under the counter was not visible or accessible to a person standing on the customer's side of the counter.

2. *Failure to negate presence of other customers.* While McCrohan did not testify that no other persons entered the store between 1:00 P.M. and 4:00 P.M., her testimony establishes that when she was lured into the walk-in cooler by appellant, she saw Dents walk behind the counter. When, despite appellant's efforts to keep her in the cooler, she left the cooler, she saw Dents walk from the back of the counter to the customers' side. No other persons were present in the store.

3. *Lack of evidence that appellant or Dents took the wallet.* It is clear that appellant did not take the wallet. But the evidence establishes (a) the wallet was in the purse behind and under the counter; (b) when McCrohan was lured to the cooler in back of the store, Dents walked behind the counter; (c) when McCrohan finally managed to elude appellant and returned to the counter, the purse, unzipped, was lying atop the opposite end of the counter; (d) the vehicle in which appellant and Dents were riding headed north on Highway 87, away from Mason and toward Brady; (e) when the vehicle was seen by police officers, it was proceeding north on Highway 87 and then turned onto Highway 71 before it was stopped by officers; (f) the wallet was found in a ditch on Highway 87 between Mason, the scene of the theft, and Brady.

The evidence points so overwhelmingly to the theft of the wallet by Dents as to compel the conclusion that Dents removed the wallet from the purse. No other conclusion, rational or otherwise, is justified. There is no evidence supporting or even suggesting an inference other than the guilt of Dents.

4. *Lack of identification of the money.* There is no requirement that a person from whom money has been stolen be able to identify the actual bills and coins which were taken in the theft. It would, indeed, be a rare case in which the victim could identify the money. If such identification were required, few, if any, persons charged with theft of money could ever be convicted.

5. *Lack of fingerprints.* Fingerprint evidence is not a prerequisite to conviction. If the absence of fingerprints were decisive, we would have to conclude that nobody took the wallet which was later found several miles from the scene of the crime.

At another point in the court's opinion, it is asserted that there is no "direct" evi-

dence that appellant solicited, encouraged, directed, aided or attempted to aid Dents in committing the theft. A finding of guilt as a party is not required to rest on "direct" evidence. Participation as a party may be established by circumstantial evidence. The court's opinion notes, but ignores holdings, as in *Harris v. State*, 645 S.W.2d 447, 457-8 (Tex.Crim.App.1983), that we may look to events occurring before, during and after the commission of the offense, and appellant's actions which show he understood what was happening and participated in the common design to commit the crime.

We need look only to appellant's actions just prior to and during the theft.

Appellant's actions were rather strange and not typical of the usual customer. His additional demands for change, after McCrohan had completed with his original request, certainly support the conclusion that he was attempting to divert her attention. Although his request for mixed cartons of soft drink was not unreasonable, his inability to decide the nature of the mixture can rationally be interpreted as establishing an intent to keep McCrohan away from the counter as long as possible. When, after seeing Dents walk behind the counter, she told appellant to make up his own assortment because she had to get back to the front, he demanded that she stay and "mix" the drinks. When she attempted to leave the cooler and return to the counter, he assaulted her, threw her against a stack of soft drinks, continued to attempt to prevent her return to the corner and repeated his insistence that she remain in the cooler and prepare the mixed cartons. When she finally eluded him and returned to the counter, he abandoned his plans to purchase mixed cartons.

The evidence abundantly supports the conclusion that appellant's bizarre behavior, including his efforts to prevent, by resort to physical violence, McCrohan's return to the counter, was designed to facilitate theft of the wallet by Dents. The evidence, in fact, is such as to justify labelling the inference of any other intent as falling far short of rational.

It may be true that appellant did not direct or solicit Dents to commit the theft. But the evidence that he knew that Dents was going to commit the crime of theft and that he aided Dents by giving Dents as much time as possible and trying to prevent immediate discovery of the theft is so overwhelming that the order of acquittal cannot be defended.

The case should be remanded for a new trial.