NUMBER 13-00-307-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 




ARCELIA CONTRERAS, Appellant,




v.


THE STATE OF TEXAS, Appellee.

 

On appeal from the 107th District Court

of Cameron County, Texas.

 

O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Opinion by Chief Justice Valdez




Arcelia Contreras, appellant, was charged by a three-count indictment with injury to a child and endangerment of a child,
S.C. See Tex. Pen. Code Ann. §§ 22.04, 22.041 (Vernon Supp. 2001). (1) After trial, the jury found appellant not guilty as
alleged in count one of the indictment, which asked if she intentionally or knowingly caused serious bodily injury to the
child by shaking her or by striking her with an unknown object, or by causing her to strike an unknown object. See Tex.
Pen. Code Ann. § 22.04(a)(1) (Vernon Supp. 2001). The jury found appellant guilty under count two of the indictment,
which asked if she intentionally or knowingly caused bodily injury to the child by striking her on the head with her
hand.See Tex. Pen. Code Ann. § 22.04(a)(3) (Vernon Supp. 2001). The jury also found appellant guilty under count three
of the indictment, finding that she intentionally, knowingly, recklessly, or with criminal negligence, engaged in conduct, by
omission, that placed the child in imminent danger of death, bodily injury, or physical or mental impairment, by failing to
provide adequate nourishment. See Tex. Pen. Code Ann. § 22.041(c) (Vernon Supp. 2001). Appellant was sentenced to ten
years confinement and a $1,000 fine under count two, and two years confinement and a $1,000 fine under count three, the
sentences to run concurrently. 

On appeal, appellant raises three issues concerning the legal and factual sufficiency of the verdict, the verdict form, and
jury misconduct. We affirm the judgment of the trial court.

Background

Appellant took her three-year-old daughter S.C. to Valley Regional Hospital on December 3, 1998, because S.C. had
allegedly been vomiting for approximately three days. In the interim, appellant had obtained medicine for S.C. at a
pharmacy in Mexico and taken her to a clinic in Mexico. Upon her arrival at the hospital, S.C. weighed nineteen pounds
and was twenty-nine inches long. Her ribs were showing, and she was extremely thin. 

According to appellant, she fed S.C. three "good" meals each day, and S.C.'s slight weight was the result of the vomiting,
or the result of a fall that injured her mouth. Appellant and her sister testified that S.C. had fallen and injured herself on
two previous occasions. Although the descriptions of the falls vary, the testimony generally indicates that S.C. was injured
in a fall on a level concrete surface while playing with a basketball, and once in a fall from a short set of steps. At this time,
appellant and S.C. lived with appellant's friend, Elizabeth Aleman, and Elizabeth's children.

 Upon S.C.'s admission to Valley Regional Hospital, an investigator from child protective services, Alejandro Hernandez,
and Detective David Martinez, a police detective with the City of Brownsville, began to investigate S.C.'s condition as a
case of suspected child abuse. According to Detective Martinez, S.C. was "very, very thin" or "extremely" thin. She didn't
speak, had a dazed look, and appeared very ill. Her skin color was yellowish. She had bruising on the right side of her
face, and her right eye had hemorrhaged. Her ribs and bone structure were visible. Juana Contreras Aleman, appellant's
sister, testified that she had witnessed appellant strike S.C.'s face with her fist. Elizabeth Aleman, appellant's roommate,
told Martinez that she had seen appellant grab S.C. by her arm and shake her. 

Dr. Jorge Gallardo Flores, a pediatrician, was on call when S.C. was admitted to the hospital. He saw several bruises on
her face and body. Based on their coloration, the bruises all appeared to have occurred at approximately the same time.
Flores testified that it was unusual for a child to have so many lesions. The locations of the bruises on S.C.'s body made
him suspect nonaccidental trauma, or child abuse. Flores further testified that S.C.'s weight and height were "way below"
normal, and he concluded that she suffered from chronic malnutrition. Flores testified that, on admission to the hospital,
S.C. was in some immediate danger of death, or bodily injury, or mental or physical impairment as a result of chronic
malnourishment.

A CT scan of S.C.'s brain showed the presence of subdural hematomas. S.C. also suffered seizures, and was examined by
two neurologists. According to Dr. Eric Barron, an ophthalmologist, S.C.'s eyes were dilated and she was unable to "fix and
follow." He found intra-retinal hemorrhages in both eyes and a vitreous hemorrhage in the right eye. Although such
hemorrhages could, in some instances, be caused by disease, through testing he ruled out any cause other than trauma.
Barron testified that falling from a distance of three feet would be unlikely to cause the hemorrhaging. As a result of these
injuries, S.C. is legally blind, and has only light perception in her left eye. The hemorrhaging, together with the subdural
hematomas and malnourishment, caused Barron to conclude that S.C. had suffered abuse or neglect. Barron was "very sure"
the injuries to her eyes were the result of shaken baby syndrome or other child abuse. 

 Neurologists Lozano and Mimbela, ophthalmologist Barron, and pediatricians Flores and Salhadar all concurred in the
diagnosis that S.C. suffered from shaken baby syndrome. Flores testified that it took a very strong, violent, back-and-forth
shaking of the child to cause this syndrome, and that a mere fall was "very unlikely" to have caused S.C.'s injuries. 

Yolanda Ramirez, a registered nurse at Valley Regional, testified that appellant was always at the hospital with S.C..
Ramirez said that at first S.C. cried and screamed when appellant tried to hold her, and would flail her arms and legs;
however, by the end of the hospitalization, appellant could hold and feed S.C.

Legal and Factual Sufficiency

In her first issue, appellant argues that the evidence is legally insufficient to show that she caused bodily injury to her child
and factually insufficient to show that she endangered her child as a result of inadequate nourishment. According to
appellant, the indictment did not allege that she caused S.C. bodily injury, therefore, the indictment failed to allege an
offense. We read this issue, and appellant's argument thereunder, as bringing both legal and factual sufficiency challenges
to each of her convictions.

A legal sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000)(en banc); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). In a legal sufficiency review, the fact finder
remains the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. See Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The appellate court serves to ensure the rationality of the fact finder,
but does not disregard, realign, or weigh the evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).
These standards for review apply equally to direct and circumstantial evidence cases. Geesa v. State, 820 S.W.2d 154, 161
(Tex. Crim. App.1991), overruled on other grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App.
2000)(overrulingGeesa insofar as it required a jury instruction on reasonable doubt).

In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. See
Johnson, 23 S.W.3d at 7 (citing Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996)). In conducting a factual
sufficiency review, the reviewing court asks whether a neutral review of all of the evidence, both for and against the jury's
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Id. at 11.

In reviewing the evidence for factual sufficiency, we do not accord the fact finder absolute deference. Id.at 8. The degree
of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial
record.Id.As a consequence, the evaluation of witness credibility and demeanor is best left to the fact finder. We must
defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution
thereof often turns on an evaluation of credibility and demeanor, and the jurors were present when the testimony was
presented. Id. In short, we may disagree with the fact finder's determination only when the record indicates such a step is
necessary to arrest the occurrence of a manifest injustice. Id. at 9. Otherwise, due deference must be accorded to the fact
finder's determinations, particularly those findings concerning the weight and credibility of the evidence. Id. (citing Jones
v. State, 944 S.W.2d 642, 648-49 (Tex. Crim. App. 1996)).

The jury found appellant guilty under count two of the indictment, which provided for a guilty finding if appellant
intentionally or knowingly caused bodily injury to S.C. by striking her on the head with her hand. See Tex. Pen. Code Ann.
§ 22.04(a)(3) (Vernon Supp. 2001). "Bodily injury" means physical pain, illness, or any impairment of physical
condition.See Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 1994). The definition of "bodily injury" is purposefully broad,
encompassing even relatively minor physical contacts "so long as they constitute more than mere offensive touching."Salley
v. State, 25 S.W.3d 878, 881 (Tex. App.-Houston [14th Dist.] 2000, no pet.). 

Juana Contreras Aleman, the appellant's sister, testified that she witnessed appellant strike S.C.'s face with her fist. Juana
said that S.C. was misbehaving, and that appellant did not hit her "too hard," but that S.C. cried "a little bit." Juana told the
appellant to stop hitting S.C.. Appellant stopped, grabbed S.C. by the arm, and took her into the bedroom. In Juana's
statement, which was admitted into evidence, Juana said that she heard S.C. continue to cry after going into the bedroom;
however, Juana denied this at trial. Juana testified that she had seen bruises on S.C.'s face on one other occasion. Based on
the blow that she had witnessed, Juana testified repeatedly that she did not believe that appellant was a good mother. Her
sister-in-law, Elizabeth Aleman, appellant's roommate, advised Juana not to discuss the events that she had witnessed, and
counseled her to lie. Appellant denied hitting S.C..

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Adelman v. State,
828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The trial record does not reveal that a different result is appropriate,
therefore we must defer to the jury's determination regarding what weight to give the contradictory testimonial evidence.See
Johnson, 23 S.W.2d at 8. Moreover, we note that the jury had before it ample evidence tending to cast doubt on appellant's
truthfulness, including appellant's own admission that she "sometimes" lies when it helps her.

Appellant argues that the evidence at trial failed to establish whether the blow to S.C.'s face caused bodily injury or whether
the child was crying as a result of her misbehavior, and there was no evidence that the child was injured or required medical
treatment. However, as noted above, the definition of "bodily injury" is purposefully broad, and does not require proof of
injury or medical treatment. See Salley, 25 S.W.2d at 881. The evidence adduced at trial was sufficient for the jury to infer
that the blow caused S.C. physical pain. See Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 1994). Any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson, 23 S.W.3d at 7.

Appellant further argues that S.C.'s injuries may have been caused by other individuals living in her household. While it is
conceivable that S.C. was injured on some other occasion by another adult or child in the household, the offense alleged in
count two of the indictment was substantiated by eyewitness testimony. We must maintain appropriate deference to the
jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. See
Johnson, 23 S.W.2d at 6-7. The verdict on this count was not clearly erroneous.

 The jury also found appellant guilty under count three of the indictment, finding that she intentionally, knowingly,
recklessly, or with criminal negligence, engaged in conduct, by omission, that placed S.C. in imminent danger of death,
bodily injury, or physical or mental impairment, by failing to provide adequate nourishment. See Tex. Pen. Code Ann. §
22.041(c) (Vernon Supp. 2001). 

Appellant testified that she put S.C. on a diet when she was approximately six months or one year old because individuals
at the WIC program had told her that S.C. was too fat, but that she kept S.C. on the diet for only approximately three
months. According to appellant's trial testimony, S.C. began losing weight after a fall in September of 1998 when she
injured her mouth. Appellant kept S.C. on a liquid diet for ten days, then resumed feeding her regular meals. Appellant
testified that S.C. lost weight even though she was feeding S.C. three good meals every day without fail, including chicken,
vegetables, rice, beans, and fruit. S.C. put some weight back on after resuming a regular diet, and did not begin losing
weight again until December when she began vomiting. However, upon being shown a picture of S.C. taken in December,
appellant testified that S.C. had appeared that thin since September of that year. Appellant said that she was worried about
S.C.'s loss of weight, but that she was too busy to take her to the doctor. Appellant testified that S.C. would occasionally
sleep walk, and appellant would find S.C. sitting on the kitchen floor eating food.

Appellant told Detective Martinez that S.C. was thin because she had been vomiting, and was dehydrated. Nurse Ramirez
testified that appellant inconsistently told her either that S.C. ate well, or didn't eat. "She changed her story two or three
times with one conversation with me." Alejandro Hernandez testified that appellant told him that S.C. was thin because
she had injured her upper and lower lips, and the doctor treating her had prescribed a liquid diet. 

Juana Contreras Aleman testified that appellant fed S.C. appropriately while they were living together, and that S.C. was a
"little bit" fat, but that S.C. began losing weight after she moved out. Juana also testified that S.C. was always asking for
food when she babysat her. Juana thought that S.C. was "too skinny." 

Dr. Jorge Gallardo Flores testified that, upon her admission to Valley Regional Hospital in December, S.C. was suffering
from chronic malnutrition. Detective Martinez, Alejandro Hernandez, and other witnesses agreed that S.C. was extremely
thin, with visible ribs and bone structure. Three years old at the time, S.C. weighed nineteen pounds and was twenty-nine
inches long. Flores testified that her weight and height were "way below" normal. Flores found that S.C. was suffering a
mild to moderate degree of dehydration commensurate with the reported period of vomiting.

Upon being treated at the hospital, S.C. began gaining a "significant" amount of weight. She remained in the hospital for
one month, until she reached twenty-five pounds. By February of 1999, approximately three months later, S.C. had gained
almost ten pounds and had grown three inches in length. According to Flores, chronic malnutrition causes mental,
physical, and social problems. Flores testified that, on admission to the hospital, S.C. was in some immediate danger of
death, or bodily injury, or mental or physical impairment as a result of chronic malnourishment.

Viewing the foregoing evidence in the light most favorable to the verdict, the trier of fact could have found the essential
elements of the offense of endangerment beyond a reasonable doubt. See Johnson, 23 S.W.3d at 7. A neutral review of all
of the evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine confidence in the jury's
verdict, or that the proof of guilt is greatly outweighed by contrary proof. Id. at 11. We conclude that the evidence was
legally and factually sufficient to support the jury's verdict as to count three of the indictment.

Appellant complains that count three of the indictment fails to allege an offense because it does not state that appellant
caused bodily injury to S.C.. This argument is misplaced. Count three of the indictment charges appellant with
abandoning or endangering a child under section 22.041 of the Texas Penal Code. This section provides that a person
commits an offense if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in
conduct that places a child . . . in imminent danger of death, bodily injury, or physical or mental impairment." See Tex.
Pen. Code Ann. § 22.041(c) (Vernon Supp. 2001). Unlike the offense of injury to a child under section 22.04 of the Texas
Penal Code, the offense of endangering a child does not require proof of intent or that appellant caused bodily injury.
Similarly, the offense of child endangerment does not require a showing that appellant intentionally, knowingly, or
recklessly caused S.C. injury, as alleged by appellant. See Tex. Pen. Code Ann. § 22.041(c) (Vernon Supp. 2001). 

Appellant's first issue is overruled. 

Jury Verdict Form

In her second issue, appellant argues that she was egregiously harmed by the jury verdict form, which appellant alleges did
not allow for a finding of "not guilty" for any of the three counts against her. The verdict form reads as follows:

We, the Jury, find the defendant, Arcelia Contreras, "Not Guilty."



____________________________

Presiding Juror



OR




We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Injury to a Child as alleged in the indictment in Count I.



____________________________

Presiding Juror



We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Injury to a Child as alleged in the indictment in Count II.



____________________________

Presiding Juror



We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Endangering a Child as alleged in the indictment in Count III.



____________________________

Presiding Juror



The presiding juror did not sign the form for "not guilty," or the "guilty" form for count one of the indictment, but did sign
the "guilty" forms under counts two and three. Appellant did not object to this verdict form at trial. 

Any alleged failure to include a "not guilty" provision in the charge was not fundamental error and required a trial objection
for appellate review. Berghan v. State, 683 S.W.2d 697, 698 (Tex. Crim. App. 1984); Bolden v. State, 489 S.W.2d 300,
302 (Tex. Crim. App. 1972); see Martinez v. State, 691 S.W.2d 791, 792 (Tex. App.-El Paso 1985, no pet.); Allen v. State,
686 S.W.2d 685, 689 (Tex. App.-San Antonio 1985, no pet.).

A poll of the jury showed that the jury understood the verdict form to allow them to find appellant not guilty. The trial
court questioned the jurors as follows:

I need to poll you on your verdict as to count one of the indictment. That verdict was not signed, which to me means that
it's not guilty of count one. And I'll ask you if you [sic] this is your true verdict. Is that your true verdict . . . ?

Each of the jurors responded in the affirmative. In the light of the jurors' clarification that leaving count one blank was a
verdict of not guilty as to that count, and the judgment rendered on the verdict recites that appellant was not guilty of count
one, we conclude that, contrary to appellant's assertions, the verdict form allowed for findings of not guilty as to each
individual count. The error in the verdict form, if any, did not deprive appellant of a fair and impartial trial. See Lang v.
State, 747 S.W.2d 428, 433-34 (Tex. App.-Corpus Christi 1988, no pet.). To the extent that the form of the verdict may
have constituted a comment on the weight of the evidence, as argued by appellant, a failure to object to an alleged comment
on the weight of the evidence also waives any review of the alleged error. Martinez, 691 S.W.2d at 793 (citing Sanchez v.
State, 434 S.W.2d 133, 133 (Tex. Crim. App. 1968)). Following Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984), we hold that appellant has failed to demonstrate reversible error as a result of the submission of the verdict form. 

We overrule appellant's second issue.

Jury Misconduct

In her third and final issue, appellant claims that she was denied a fair and impartial trial as a result of jury misconduct
occurring when a juror and a witness had lunch together during the trial. The witness, Detective David Martinez, ate lunch
at the courthouse coffee shop with juror Virginia Restovich, a teacher at a local elementary school. Martinez and Restovich
knew each other from some of Martinez's other investigations at Restovich's school.

Appellant has the burden of proving the allegation of juror misconduct. Hughes v. State, 24 S.W.3d 833, 842 (Tex. Crim.
App. 2000). A juror is not permitted to converse with anyone about the case on trial except in the presence of and with the
permission of the court. Tex. Crim. Proc. Code Ann. art. 36.22 (Vernon 1981). When a juror engages in unauthorized
conversation, injury is presumed. Hughes, 24 S.W.3d at 842; Alba v. State, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995).
This presumption is rebuttable by a showing that the case was not discussed or that nothing prejudicial to the accused was
said. Alba, 905 S.W.2d at 587. 

In the instant case, the court held a hearing after the unauthorized conversation was brought to its attention. During the
hearing, Detective Martinez testified that he and Restovich did not discuss the case in any way, nor did they discuss
Martinez's testimony, nor did they talk in general about child abuse cases. Appellant presented no evidence to the contrary.
Accordingly, the presumption of harm arising from the juror and witness's unauthorized conversation was rebutted by a
showing that the case was not discussed. Alba, 905 S.W.2d at 587. 

We overrule appellant's third issue.

Having overruled each of appellant's issues, the judgment of the trial court is AFFIRMED.

 

ROGELIO VALDEZ

Chief Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 31st day of August, 2001. 

1. Appellant was indicted under former versions of these sections; however, the prior law and current law are identical
concerning the elements of the offenses alleged. We will therefore refer to the current versions of these provisions,
codified as Tex. Pen. Code Ann. §§ 22.04, 22.041 (Vernon Supp. 2001), throughout this opinion.