**Arcelia CONTRERAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–00–307–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 2001.

---

Everardo Garcia, Brownsville, for Appellant.

Yolanda De Leon, Dist. Atty., Brownsville, for Appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Chief Justice VALDEZ.

Arcelia Contreras, appellant, was charged by a three-count indictment with injury to a child and endangerment of a child, S.C. *See* TEX. PEN.CODE ANN. §§ 22.04, 22.041 (Vernon Supp.2001).[1] After trial, the jury found appellant not guilty as alleged in count one of the indictment, which asked if she intentionally or knowingly caused serious bodily injury to the child by shaking her or by striking her with an unknown object, or by causing her to strike an unknown object. *See* TEX. PEN.CODE ANN. § 22.04(a)(1) (Vernon Supp. 2001). The jury found appellant guilty under count two of the indictment, which asked if she intentionally or knowingly caused bodily injury to the child by striking her on the head with her hand. *See* TEX. PEN.CODE ANN. § 22.04(a)(3) (Vernon Supp.2001). The jury also found appellant guilty under count three of the indictment, finding that she intentionally, knowingly, recklessly, or with criminal negligence, engaged in conduct, by omission, that placed the child in imminent danger of death, bodily injury, or physical or mental impairment, by failing to provide adequate nourishment. *See* TEX. PEN.CODE ANN. § 22.041(c) (Vernon Supp.2001). Appellant was sentenced to ten years confinement and a $1,000 fine under count two, and two years confinement and a $1,000 fine under count three, the sentences to run concurrently.

On appeal, appellant raises three issues concerning the legal and factual sufficiency of the verdict, the verdict form, and jury misconduct. We affirm the judgment of the trial court.

### Background

Appellant took her three-year-old daughter S.C. to Valley Regional Hospital on December 3, 1998, because S.C. had allegedly been vomiting for approximately three days. In the interim, appellant had obtained medicine for S.C. at a pharmacy in Mexico and taken her to a clinic in Mexico. Upon her arrival at the hospital, S.C. weighed nineteen pounds and was twenty-nine inches long. Her ribs were showing, and she was extremely thin.

According to appellant, she fed S.C. three "good" meals each day, and S.C.'s slight weight was the result of the vomiting, or the result of a fall that injured her mouth. Appellant and her sister testified that S.C. had fallen and injured herself on two previous occasions. Although the descriptions of the falls vary, the testimony generally indicates that S.C. was injured in a fall on a level concrete surface while playing with a basketball, and once in a fall from a short set of steps. At this time, appellant and S.C. lived with appellant's friend, Elizabeth Aleman, and Elizabeth's children.

Upon S.C.'s admission to Valley Regional Hospital, an investigator from child protective services, Alejandro Hernandez, and Detective David Martinez, a police detective with the City of Brownsville, began to investigate S.C.'s condition as a case of suspected child abuse. According to Detective Martinez, S.C. was "very, very thin" or "extremely" thin. She didn't speak, had a dazed look, and appeared very ill. Her skin color was yellowish.

---

1. Appellant was indicted under former versions of these sections; however, the prior law and current law are identical concerning the elements of the offenses alleged. We will therefore refer to the current versions of these provisions, codified as TEX. PEN.CODE ANN. §§ 22.04, 22.041 (Vernon Supp.2001), throughout this opinion.

She had bruising on the right side of her face, and her right eye had hemorrhaged. Her ribs and bone structure were visible. Juana Contreras Aleman, appellant's sister, testified that she had witnessed appellant strike S.C.'s face with her fist. Elizabeth Aleman, appellant's roommate, told Martinez that she had seen appellant grab S.C. by her arm and shake her.

Dr. Jorge Gallardo Flores, a pediatrician, was on call when S.C. was admitted to the hospital. He saw several bruises on her face and body. Based on their coloration, the bruises all appeared to have occurred at approximately the same time. Flores testified that it was unusual for a child to have so many lesions. The locations of the bruises on S.C.'s body made him suspect nonaccidental trauma, or child abuse.

Flores further testified that S.C.'s weight and height were "way below" normal, and he concluded that she suffered from chronic malnutrition. Flores testified that, on admission to the hospital, S.C. was in some immediate danger of death, or bodily injury, or mental or physical impairment as a result of chronic malnourishment.

A CT scan of S.C.'s brain showed the presence of subdural hematomas. S.C. also suffered seizures, and was examined by two neurologists. According to Dr. Eric Barron, an ophthalmologist, S.C.'s eyes were dilated and she was unable to "fix and follow." He found intra-retinal hemorrhages in both eyes and a vitreous hemorrhage in the right eye. Although such hemorrhages could, in some instances, be caused by disease, through testing he ruled out any cause other than trauma. Barron testified that falling from a distance of three feet would be unlikely to cause the hemorrhaging. As a result of these injuries, S.C. is legally blind, and has only light perception in her left eye. The hemorrhaging, together with the subdural hematomas and malnourishment, caused Barron to conclude that S.C. had suffered abuse or neglect. Barron was "very sure" the injuries to her eyes were the result of shaken baby syndrome or other child abuse.

Neurologists Lozano and Mimbela, ophthalmologist Barron, and pediatricians Flores and Salhadar all concurred in the diagnosis that S.C. suffered from shaken baby syndrome. Flores testified that it took a very strong, violent, back-and-forth shaking of the child to cause this syndrome, and that a mere fall was "very unlikely" to have caused S.C.'s injuries.

Yolanda Ramirez, a registered nurse at Valley Regional, testified that appellant was always at the hospital with S.C. Ramirez said that at first S.C. cried and screamed when appellant tried to hold her, and would flail her arms and legs; however, by the end of the hospitalization, appellant could hold and feed S.C.

*Legal and Factual Sufficiency*

In her first issue, appellant argues that the evidence is legally insufficient to show that she caused bodily injury to her child and factually insufficient to show that she endangered her child as a result of inadequate nourishment. According to appellant, the indictment did not allege that she caused S.C. bodily injury, therefore, the indictment failed to allege an offense. We read this issue, and appellant's argument thereunder, as bringing both legal and factual sufficiency challenges to each of her convictions.

A legal sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000)(en banc); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim.App.2000). In a legal sufficiency review, the fact finder remains the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex.Crim.App.1994). The appellate court serves to ensure the rationality of the fact finder, but does not disregard, realign, or weigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). These standards for review apply equally to direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000)(overruling *Geesa* insofar as it required a jury instruction on reasonable doubt).

 In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *See Johnson*, 23 S.W.3d at 7 (citing *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996)). In conducting a factual sufficiency review, the reviewing court asks whether a neutral review of all of the evidence, both for and against the jury's finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* at 11.

 In reviewing the evidence for factual sufficiency, we do not accord the fact finder absolute deference. *Id.* at 8. The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. *Id.* As a consequence, the evaluation of witness credibility and demeanor is best left to the fact finder. We must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution thereof often turns on an evaluation of credibility and demeanor, and the jurors were present when the testimony was presented. *Id.* In short, we may disagree with the fact finder's determination only when the record indicates such a step is necessary to arrest the occurrence of a manifest injustice. *Id.* at 9. Otherwise, due deference must be accorded to the fact finder's determinations, particularly those findings concerning the weight and credibility of the evidence. *Id.* (citing *Jones v. State*, 944 S.W.2d 642, 648–49 (Tex.Crim.App. 1996)).

 The jury found appellant guilty under count two of the indictment, which provided for a guilty finding if appellant intentionally or knowingly caused bodily injury to S.C. by striking her on the head with her hand. *See* TEX. PEN.CODE ANN. § 22 .04(a)(3) (Vernon Supp.2001). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *See* TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon 1994). The definition of "bodily injury" is purposefully broad, encompassing even relatively minor physical contacts "so long as they constitute more than mere offensive touching." *Salley v. State*, 25 S.W.3d 878, 881 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

Juana Contreras Aleman, the appellant's sister, testified that she witnessed appellant strike S.C.'s face with her fist. Juana said that S.C. was misbehaving, and that appellant did not hit her "too hard," but that S.C. cried "a little bit." Juana told the appellant to stop hitting S.C. Appellant stopped, grabbed S.C. by the arm, and took her into the bedroom. In Juana's statement, which was admitted into evidence, Juana said that she heard S.C. con-

tinue to cry after going into the bedroom; however, Juana denied this at trial. Juana testified that she had seen bruises on S.C.'s face on one other occasion. Based on the blow that she had witnessed, Juana testified repeatedly that she did not believe that appellant was a good mother. Her sister-in-law, Elizabeth Aleman, appellant's roommate, advised Juana not to discuss the events that she had witnessed, and counseled her to lie. Appellant denied hitting S.C.

■ The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). The trial record does not reveal that a different result is appropriate, therefore we must defer to the jury's determination regarding what weight to give the contradictory testimonial evidence. *See Johnson,* 23 S.W.3d at 8. Moreover, we note that the jury had before it ample evidence tending to cast doubt on appellant's truthfulness, including appellant's own admission that she "sometimes" lies when it helps her.

Appellant argues that the evidence at trial failed to establish whether the blow to S.C.'s face caused bodily injury or whether the child was crying as a result of her misbehavior, and there was no evidence that the child was injured or required medical treatment. However, as noted above, the definition of "bodily injury" is purposefully broad, and does not require proof of injury or medical treatment. *See Salley,* 25 S.W.3d at 881. The evidence adduced at trial was sufficient for the jury to infer that the blow caused S .C. physical pain. *See* TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon 1994). Any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson,* 23 S.W.3d at 7.

■ Appellant further argues that S.C.'s injuries may have been caused by other individuals living in her household. While it is conceivable that S.C. was injured on some other occasion by another adult or child in the household, the offense alleged in count two of the indictment was substantiated by eyewitness testimony. We must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. *See Johnson,* 23 S.W.3d at 6–7. The verdict on this count was not clearly erroneous.

■ The jury also found appellant guilty under count three of the indictment, finding that she intentionally, knowingly, recklessly, or with criminal negligence, engaged in conduct, by omission, that placed S.C. in imminent danger of death, bodily injury, or physical or mental impairment, by failing to provide adequate nourishment. *See* TEX. PEN.CODE ANN. § 22.041(c) (Vernon Supp.2001).

Appellant testified that she put S.C. on a diet when she was approximately six months or one year old because individuals at the WIC program had told her that S.C. was too fat, but that she kept S.C. on the diet for only approximately three months. According to appellant's trial testimony, S.C. began losing weight after a fall in September of 1998 when she injured her mouth. Appellant kept S.C. on a liquid diet for ten days, then resumed feeding her regular meals. Appellant testified that S.C. lost weight even though she was feeding S.C. three good meals every day without fail, including chicken, vegetables, rice, beans, and fruit. S.C. put some weight back on after resuming a regular diet, and did not begin losing weight again until December when she began vomiting. However, upon being shown a picture of S.C. taken in December, appellant testified

that S.C. had appeared that thin since September of that year. Appellant said that she was worried about S.C.'s loss of weight, but that she was too busy to take her to the doctor. Appellant testified that S.C. would occasionally sleep walk, and appellant would find S.C. sitting on the kitchen floor eating food.

Appellant told Detective Martinez that S.C. was thin because she had been vomiting, and was dehydrated. Nurse Ramirez testified that appellant inconsistently told her either that S.C. ate well, or didn't eat. "She changed her story two or three times with one conversation with me." Alejandro Hernandez testified that appellant told him that S.C. was thin because she had injured her upper and lower lips, and the doctor treating her had prescribed a liquid diet.

Juana Contreras Aleman testified that appellant fed S.C. appropriately while they were living together, and that S.C. was a "little bit" fat, but that S.C. began losing weight after she moved out. Juana also testified that S.C. was always asking for food when she babysat her. Juana thought that S.C. was "too skinny ."

Dr. Jorge Gallardo Flores testified that, upon her admission to Valley Regional Hospital in December, S.C. was suffering from chronic malnutrition. Detective Martinez, Alejandro Hernandez, and other witnesses agreed that S.C. was extremely thin, with visible ribs and bone structure. Three years old at the time, S.C. weighed nineteen pounds and was twenty-nine inches long. Flores testified that her weight and height were "way below" normal. Flores found that S.C. was suffering a mild to moderate degree of dehydration commensurate with the reported period of vomiting.

Upon being treated at the hospital, S.C. began gaining a "significant" amount of weight. She remained in the hospital for one month, until she reached twenty-five pounds. By February of 1999, approximately three months later, S.C. had gained almost ten pounds and had grown three inches in length. According to Flores, chronic malnutrition causes mental, physical, and social problems. Flores testified that, on admission to the hospital, S.C. was in some immediate danger of death, or bodily injury, or mental or physical impairment as a result of chronic malnourishment.

Viewing the foregoing evidence in the light most favorable to the verdict, the trier of fact could have found the essential elements of the offense of endangerment beyond a reasonable doubt. *See Johnson*, 23 S.W.3d at 7. A neutral review of all of the evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict, or that the proof of guilt is greatly outweighed by contrary proof. *Id.* at 11. We conclude that the evidence was legally and factually sufficient to support the jury's verdict as to count three of the indictment.

■ Appellant complains that count three of the indictment fails to allege an offense because it does not state that appellant caused bodily injury to S.C.. This argument is misplaced. Count three of the indictment charges appellant with abandoning or endangering a child under section 22.041 of the Texas Penal Code. This section provides that a person commits an offense if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child ... in imminent danger of death, bodily injury, or physical or mental impairment." *See* TEX. PEN.CODE ANN. § 22.041(c) (Vernon Supp. 2001). Unlike the offense of injury to a child under section 22.04 of the Texas Penal Code, the offense of endangering a

child does not require proof of intent or that appellant caused bodily injury. Similarly, the offense of child endangerment does not require a showing that appellant intentionally, knowingly, or recklessly caused S.C. injury, as alleged by appellant. *See* TEX. PEN.CODE ANN. § 22.041(c) (Vernon Supp.2001).

Appellant's first issue is overruled.

### Jury Verdict Form

 In her second issue, appellant argues that she was egregiously harmed by the jury verdict form, which appellant alleges did not allow for a finding of "not guilty" for any of the three counts against her. The verdict form reads as follows:

We, the Jury, find the defendant, Arcelia Contreras, "Not Guilty."

_____
Presiding Juror

OR

We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Injury to a Child as alleged in the indictment in Count I.

_____
Presiding Juror

We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Injury to a Child as alleged in the indictment in Count II.

_____
Presiding Juror

We, the Jury, find the defendant, Arcelia Contreras, "Guilty" of Endangering a Child as alleged in the indictment in Count III.

_____
Presiding Juror

The presiding juror did not sign the form for "not guilty," or the "guilty" form for count one of the indictment, but did sign the "guilty" forms under counts two and three. Appellant did not object to this verdict form at trial.

Any alleged failure to include a "not guilty" provision in the charge was not fundamental error and required a trial objection for appellate review. *Berghahn v. State,* 683 S.W.2d 697, 698 (Tex.Crim.App. 1984); *Bolden v. State,* 489 S.W.2d 300, 302 (Tex.Crim.App.1972); *see Martinez v. State,* 691 S.W.2d 791, 792 (Tex.App.—El Paso 1985, no pet.); *Allen v. State,* 686 S.W.2d 685, 689 (Tex.App.—San Antonio 1985, no pet.).

 A poll of the jury showed that the jury understood the verdict form to allow them to find appellant not guilty. The trial court questioned the jurors as follows:

I need to poll you on your verdict as to count one of the indictment. That verdict was not signed, which to me means that it's not guilty of count one. And I'll ask you if you [sic] this is your true verdict. Is that your true verdict … ?

Each of the jurors responded in the affirmative. In the light of the jurors' clarification that leaving count one blank was a verdict of not guilty as to that count, and the judgment rendered on the verdict recites that appellant was not guilty of count one, we conclude that, contrary to appellant's assertions, the verdict form allowed for findings of not guilty as to each individual count. The error in the verdict form, if any, did not deprive appellant of a fair and impartial trial. *See Lang v. State,* 747 S.W.2d 428, 433–34 (Tex.App.—Corpus Christi 1988, no pet.). To the extent that the form of the verdict may have constituted a comment on the weight of the evidence, as argued by appellant, a failure to object to an alleged comment on the weight of the evidence also waives any review of the alleged error. *Martinez,* 691 S.W.2d at 793 (citing *Sanchez v. State,* 434 S.W.2d 133, 133 (Tex.Crim.App.1968)).

Following *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984), we hold that appellant has failed to demonstrate reversible error as a result of the submission of the verdict form.

We overrule appellant's second issue.

### *Jury Misconduct*

In her third and final issue, appellant claims that she was denied a fair and impartial trial as a result of jury misconduct occurring when a juror and a witness had lunch together during the trial. The witness, Detective David Martinez, ate lunch at the courthouse coffee shop with juror Virginia Restovich, a teacher at a local elementary school. Martinez and Restovich knew each other from some of Martinez's other investigations at Restovich's school.

Appellant has the burden of proving the allegation of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim.App.2000). A juror is not permitted to converse with anyone about the case on trial except in the presence of and with the permission of the court. Tex.Crim. Proc. Code Ann. art. 36 .22 (Vernon 1981). When a juror engages in unauthorized conversation, injury is presumed. *Hughes*, 24 S.W.3d at 842; *Alba v. State*, 905 S.W.2d 581, 587 (Tex.Crim.App.1995). This presumption is rebuttable by a showing that the case was not discussed or that nothing prejudicial to the accused was said. *Alba*, 905 S.W.2d at 587.

In the instant case, the court held a hearing after the unauthorized conversation was brought to its attention. During the hearing, Detective Martinez testified that he and Restovich did not discuss the case in any way, nor did they discuss Martinez's testimony, nor did they talk in general about child abuse cases. Appellant presented no evidence to the contrary.

Accordingly, the presumption of harm arising from the juror and witness's unauthorized conversation was rebutted by a showing that the case was not discussed. *Alba*, 905 S.W.2d at 587.

We overrule appellant's third issue.

Having overruled each of appellant's issues, the judgment of the trial court is AFFIRMED.