NO. 12-02-00171-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

CHARLOTTE NAIVAR,                                    §     APPEAL FROM THE THIRD
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     ANDERSON COUNTY, TEXAS





MEMORANDUM OPINION
            Charlotte Naivar (“Appellant”) was convicted on two charges of endangering a child, a state
jail felony, and was sentenced to two years of confinement. Appellant raises six issues complaining
of improper introduction of evidence and improper argument by the State. We affirm.
 
Background
            Glenda Willis (“Willis”) babysat Appellant’s children, daughters J.M. and T.L., and son
B.W. On March 9, 2000, Appellant’s nine-year-old daughter, J.M., told Willis that James Wardell
(“Wardell”) had been “messing” with her. Wardell was Appellant’s live-in boyfriend at the time. 
When Willis picked up Appellant from her workplace that evening, she told Appellant of J.M.’s
outcry and said that she would report the sexual assault to the authorities if Appellant refused to do
so. 
            Willis then drove Appellant and Appellant’s children to the police station. Officer Steven
McDaniel (“McDaniel”) of the Palestine Police Department talked with Appellant and Willis. 
Upon learning that J.M. had made an outcry statement, McDaniels called Detective Joe Berreth
(“Berreth”). Berreth interviewed both J.M. and Appellant that night. J.M. said that Wardell
touched her “bottom area in the front and in the back of her body.” She said this occurred when her
mother was at work. J.M. made these comments to Berreth in Appellant’s presence. Berreth stated
that without further evidence, he had probable cause to arrest Wardell for indecency with a child. 
Berreth instructed Appellant to not allow Wardell in her house or near the girls. 
            The same night, Berreth interviewed Wardell, who denied sexually molesting the girls. He
admitted he lived with Appellant and babysat the children while Appellant worked at night. The
police ordered Wardell to leave Appellant’s house that night. 
            On March 13, Willis and Appellant took J.M. and T.L. to the hospital for a physical exam
by a sexual assault nurse examiner (“SANE”). T.L., who was five years old, said that James had
touched her bottom. J.M. said, “When my mama was at work a long time ago and James was living
with us, he was touching me in my private parts -- my bottom with his hand.” Child Protective
Services (“CPS”) caseworker Lynn Badger (“Badger”) spoke with the girls that day. After J.M.
and T.L. indicated they had been molested, Badger told Appellant of the girls’ claims and instructed
Appellant to keep Wardell away from her children. On March 15, the girls underwent more
extensive interviews with CPS at the Jacksonville Child Advocacy Center. These interviews further
solidified the accounts of abuse the girls had suffered. Both oral and written family safety plans
were initiated to protect the girls from further abuse. Berreth and Badger reiterated to Appellant
that Wardell should not be allowed near her children. Appellant became upset, not believing that
Wardell had molested the girls. 
            On May 31, J.M. made another outcry to Willis concerning more abuse from Wardell. 
Willis contacted CPS and reported that Appellant was allowing Wardell access to the girls. 
Appellant’s daughters were once again taken to the hospital to be examined by a SANE. At this
time, T.L. stated that James had not touched her, only J.M. J.M. complained of stinging in her
vaginal area. She stated that her mom’s boyfriend “put his finger up her front.” 
            Berreth interviewed Appellant again. During the interview, Appellant said she did not
believe that Wardell had sexually assaulted her daughters. Based on her disbelief, Appellant
admitted that she had allowed Wardell back in her home to help perform work around the house,
but that he had slept on the couch. When informed of J.M.’s latest outcry, Appellant became angry
and accused Badger of coaching the girls. Badger instructed Appellant to keep Wardell away from
her house and her children.
            On June 2, Berreth interviewed Wardell at which time he confessed to sexually assaulting
the girls. He admitted that he began molesting the girls in April of 1999. After Wardell’s
confession, Appellant agreed for CPS to place her children in Willis’s home. Appellant claimed
to still not believe the accusations and called J.M. a “lying little bitch.” But she told Willis that
J.M. could have stopped the sexual assaults if she had wanted by saying “no.” Appellant was
charged by information with two counts of endangering a child


 in April 2001. She elected to be
tried by a jury and pleaded “not guilty” to both charges. 
            At trial, Wardell testified that he molested Appellant’s daughters five times. He indicated
that when they had to walk through his bedroom to use the bathroom, he would pull them onto the
bed and get them to assist him in masturbating. He also admitted that he would have each girl place
her mouth on his penis. He penetrated them vaginally with both his finger and his penis. He also
touched their breasts on several occasions. The prosecutor asked Wardell if he knew that the girls
urinated in the bedroom floor to avoid having to walk past him in his bedroom. Wardell responded
that he and Appellant were aware of this behavior, but did not know the reason for it. Wardell
stated that Appellant had never discussed the sexual assaults with him, even after J.M.’s outcry of
abuse.
            J.M. also testified. She confirmed that Wardell had done “bad things” to her and also
indicated she had seen Wardell after “the police carried him away.” She stated that she and her
sister and brother rode in the van with Appellant when she gave Wardell a ride. 
            Appellant testified in her own behalf. She admitted that she had been instructed to not allow
Wardell in the house or around her children. But Appellant asked Wardell to help her with some
chores around the house even after she had been told of the sexual abuse. She also allowed Wardell
to “nap” on her couch. Appellant stated that the only time Wardell was around her children was
one night when she took him to the hospital. 
            A jury convicted Appellant on both charges of endangering a child. During the punishment
phase of the trial, evidence revealed that Robert Miller, J.M.’s father, was the first man convicted
of sexually assaulting Appellant’s daughters. He is currently incarcerated on that conviction. 
Bobby Lee, T.L.’s father, testified for the State at the punishment phase of the trial. He denied
sexually assaulting the girls, but his confession was read into the record detailing his sexual assaults
of J.M. and T.L. He was the second man convicted of sexually assaulting Appellant’s daughters,
and is currently incarcerated. Wardell became the third man convicted for sexually assaulting
Appellant’s daughters, and is currently serving a 35-year sentence. 
            Kristi Murray (“Murray”) with CPS testified about an alleged fourth sexual molester. 
During an interview, Appellant told Murray that J.M. had made an outcry of sexual abuse from
Willis’s son, Emmit Willis. Appellant told Murray that she did not report the latest allegation
because she did not want to look bad at her trial. According to Murray, Appellant “told me that she
didn’t report it. She said she’s damned if she does, damned if she doesn’t. She says, ‘What is it
gonna make me look like when I get on the stand and they find out my daughters been molested
four times by four different men?’”
            Appellant’s godparents also testified on Appellant’s behalf. They stated she was a hard-working mother struggling to provide for her children. They also testified that she loved her
children very much.
            At the conclusion of the punishment phase, the jury sentenced Appellant to two years of
confinement.


 This appeal ensued.
 
Berreth’s Opinion on Wardell’s Truthfulness
     Appellant complains in her first issue that the trial court erroneously allowed Detective Joe
Berreth to act as a “human lie detector.” During the State’s case-in-chief, Berreth testified about
interviews he conducted with Wardell. The prosecutor questioned Berreth about his second
interview with Wardell after J.M.’s second outcry in May. It was during this interview that Wardell
confessed to the sexual assaults. But he claimed the last time he had acted inappropriately with the
girls was January 2000. In an apparent attempt to provide additional evidence that Appellant placed
her children in imminent danger, the State sought to establish that Wardell had sexually assaulted
the girls after Appellant was told in March 2000 to keep Wardell away from them. When the State
asked the detective if he believed Wardell was truthful when he said he had not assaulted the girls
since January 2000, Appellant objected. The State then laid the predicate for qualifying Berreth
as an expert. When the prosecutor asked Wardell the question the second time, Appellant again
objected. The trial court found Berreth to be an expert and allowed him to answer the question. 
Berreth stated he believed Wardell lied. Appellant complained that the trial court erred when it
allowed the detective to give his opinion on Wardell’s truthfulness. Wardell testified during the
State’s case-in-chief. His confession, which included the statement Berreth considered untruthful,
was also admitted into evidence. 
Standard of Review
            We review the trial court’s decision to admit or exclude expert testimony under an abuse
of discretion standard. Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). An abuse of
discretion occurs when the trial court acts without reference to any guiding rules and principles or
acts arbitrarily or unreasonably. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990). In determining whether a trial court abused its discretion, we review the trial court’s ruling
in light of what was before the trial court at the time the ruling was made. Hoyos v. State, 982
S.W.2d 419, 422 (Tex. Crim. App. 1998). This standard requires an appellate court to uphold a trial
court’s admissibility decisions when they are within the zone of reasonable disagreement. See
Montgomery, 810 S.W.2d at 391 (op. on reh’g). 
Applicable Law and Analysis
            The admissibility of expert testimony is governed by Rule 702 of the Texas Rules of
Evidence, which provides that
 
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,
experience, training, or education may testify thereto in the form of an opinion or otherwise.
 
Tex. R. Evid. 702. 
            An expert may give testimony that will assist the trier of fact on issues that are beyond the
training and experience of the average juror. Hopkins v. State, 480 S.W.2d 212, 218 (Tex. Crim.
App. 1972). In analyzing the admissibility of testimony under Rule 702, the court of criminal
appeals stated that the threshold determination for admitting expert testimony is whether such
testimony “if believed, will assist the untrained layman trier of fact to understand the evidence or
determine a fact in issue.” Duckett v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990),
overruled on other grounds, Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). The
court cautioned that expert testimony that decides an ultimate fact for the jury, such as a direct
opinion on the truthfulness of the witness, crosses the line and is not admissible under Rule 702. 
Id. at 914. The court reasoned that this testimony does more than assist the trier of fact to
understand the evidence or to determine a fact in issue; it decides an issue for the jury. Id. 
            In the instant case, Appellant does not contest Berreth’s status as an expert. However, she
asserts the trial court erred when it admitted Berreth’s opinion on Wardell’s truthfulness. We agree
that Berreth’s comment that he believed Wardell lied crosses the line of admissibility. See Yount
v. State, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). 
Harm Analysis
            Having concluded that the challenged testimony was inadmissible, we must now conduct
a harm analysis. Violation of an evidentiary rule that results in the erroneous admission of evidence
is treated as nonconstitutional error. Hankton v. State, 23 S.W.3d 540, 548 (Tex. App.–Houston
[1st Dist.] 2000, pet. ref’d). A nonconstitutional error must be disregarded unless it affects a
substantial right. Id.; Tex. R. App. P. 44.2(b). A substantial right is not affected unless the error had
a “substantial and injurious effect or influence in determining the jury’s verdict.” King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997).
            Here, Berreth did not comment on Wardell’s overall credibility or whether he believed
Wardell would be truthful at trial. Berreth stated that he believed Wardell answered one question
untruthfully during an investigative interview. Wardell testified during the State’s case-in-chief and
stated that the last time he sexually assaulted the girls was January 2000. Appellant had the
opportunity to rebut any inference that Wardell had access to the girls after January 2000 and could
have sexually assaulted them. Moreover, whether or not Wardell sexually assaulted J.M. and T.L.
after March 2000 is irrelevant to Appellant’s conviction. The offense of endangering a child
“imposes a duty upon those responsible for children to refrain from unreasonably subjecting the
child to danger.” Schultz v. State, 923 S.W.2d 1, 4 (Tex. Crim. App. 1996). The offense of
endangering a child does not require proof that Appellant caused bodily injury. See Contreras v.
State, 54 S.W.3d 898, 905-06 (Tex. App.–Corpus Christi 2001, no pet.). Further, the statute does
not require proof that Appellant intended or knew that her conduct placed her children in imminent
danger. See id. The jury only had to find that Appellant failed to refrain from unreasonably
subjecting her children to danger. In this case, the danger was Wardell. Thus, the jury only had to
find that Appellant failed to refrain from unreasonably subjecting her children to him. 
            Further, the trial court instructed the jury that it must decide the credibility of the witnesses
testifying from the stand. Our judicial system presumes that judicial admonishments to the jury are
efficacious. Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (citing Waldo v. State,
746 S.W.2d 750, 754 (Tex. Crim. App. 1988)). Therefore, we conclude the record provides fair
assurance that the trial court’s error did not unduly influence the jury, if at all. Consequently, the
admission of Berreth’s comment did not affect Appellant’s substantial rights. Accordingly, we
overrule Appellant’s first issue.
 
Prosecutor’s Opening Statement
            In her second issue, Appellant complains that the prosecutor was allowed to tell the jury in
his opening statement that the two fathers of the victims are currently incarcerated. Appellant
claims these statements constituted impermissible character evidence about Appellant that was
irrelevant and unfairly prejudicial. 
Applicable Law and Analysis
            The law provides for a fair trial, free from improper argument by the prosecutor. Long v.
State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). A prosecutor’s opening statement is
authorized by article 36.01(a)(3) of the Texas Code of Criminal Procedure. Tex. Code Crim.
Proc. Ann. art. 36.01(a)(3) (Vernon Supp. 2004). The opening statement should inform the jury
of the nature of the accusation and the facts that the State expects to prove. See Taylor v. State, 947
S.W.2d 698, 706 (Tex. App.–Fort Worth 1997, pet. ref’d). If improper statements were made, an
appellate court must determine whether the impropriety constitutes reversible error. Herrera v.
State, 915 S.W.2d 94, 97 (Tex. App.–San Antonio 1996, no writ.). We view the improper
statements in conjunction with the record as a whole, and ascertain whether the statement was so
prejudicial as to deny an appellant a fair trial. Id. 
            In this case, the trial judge originally overruled Appellant’s objections that the incarceration
of the victims’ fathers is not relevant and that any probative value of the evidence would be
outweighed by its prejudicial effect. After the court’s ruling, the prosecutor continued with his
opening statement. Near the end of his opening statement, the prosecutor again mentioned
Appellant’s history with men. Appellant objected based on relevance. At this time, the jury was
taken to the jury room, and a discussion between the court and counsel ensued. Although the State
did not attempt to tell the jury that these two fathers were incarcerated based on their convictions
for sexually assaulting Appellant’s daughters, the trial judge sustained Appellant’s objections. At
that time, the judge also sustained Appellant’s previous objections to comments made about the
fathers of the victims as well as Appellant’s current live-in boyfriend. The State urged the court to
allow the statements based on Appellant’s plan, knowledge, and/or motive excepted by Rule 404(b)



of the Texas Rules of Evidence. But the court held fast to its ruling sustaining the objection, stating
“I can’t fit it into 404b.” Once the jury was brought back in to the courtroom, Appellant failed to
ask for a jury instruction to disregard and failed to move for a mistrial. 
            Rule 33.1 of the Texas Rules of Appellate Procedure dictates that an appellant make a
timely objection, stating the specific grounds for the ruling sought, and receive a ruling from the
trial court on that objection in order to preserve error for appellate review. See Tex. R. App. P. 33.1. 
Even constitutional errors, such as due process complaints, are waived if not raised first in the trial
court. See Jimenez v. State, 32 S.W.3d 233, 235 (Tex. Crim. App. 2000). To preserve error in
criminal cases, the defendant must (1) object to the argument, (2) if the objection is sustained, move
for an instruction to disregard, and (3) if the instruction is given, move for a mistrial. Cook v. State,
858 S.W.2d 467, 473 (Tex. Crim. App. 1993). A defendant must pursue her objection to an adverse
ruling to complain on appeal. Id. 
            Here, the trial court granted all the relief Appellant requested. Because Appellant did not
pursue her objection to an adverse ruling, she has not preserved error. We overrule Appellant’s
second issue. 
 
Double Hearsay – Medical Reports
            In her third issue, Appellant contends the trial court erred by admitting two medical reports
from J.M.’s and T.L.’s June 2 SANE exams. Specifically, Appellant claims that the records contain
no relevant material, other than statements that were hearsay within hearsay. 
            On June 2, J.M. and T.L. were taken to the hospital for a second SANE physical exam based
on J.M.’s May 31 outcry. Exhibit 2 contains the records from T.L.’s exam, and Exhibit 4 contains
the records from J.M.’s exam. Exhibit 2 indicates that T.L. said Wardell had been “touching her
sister J[.]” but had not touched her (T.L.). This note appears on the typed Initial Assessment Form. 
On the handwritten Emergency Physician Record – Female Urogenital Problems, the record shows,
“The child denies being sexually assaulted by her mom’s boyfriend.” This record identifies the
“historian” as both patient and babysitter. 
            Exhibit 4 shows that J.M. said her “mama’s boyfriend put his finger up her front on
Wednesday night.” This note appears on the handwritten Triage Nursing Assessment form. The
handwritten Emergency Physician Record – Female Urogenital Problems shows that J.M.
complained of a stinging sensation in her vaginal opening, and “[s]aid her mom’s boyfriend put his
finger in there.” This record identifies the “historian” as both patient and babysitter. 
Applicable Law and Analysis
            Hearsay rules provide assurance that evidence introduced at trial will be reliable. Smith v.
State, 88 S.W.3d 652, 658 (Tex. App.–Tyler 2002, pet. ref’d) (citing California v. Green, 399 U.S.
149, 155, 90 S. Ct. 1930, 1933, 26 L. Ed.2d 489 (1970)). Hearsay is an out-of-court statement
offered at trial to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not
admissible, absent a rule-based or statutory exception to the hearsay rule. Tex. R. Evid. 802; see
Philpot v. State, 897 S.W.2d 848, 851 (Tex. App.–Dallas 1995, writ ref’d). Out-of-court statements
are typically excluded because they are not made under the usual testimonial conditions – oath,
personal appearance at trial, and cross-examination – and therefore lack the conventional indicia
of reliability. Green, 399 U.S. at 158, 90 S. Ct. at 1935. But the rules of evidence include a number
of exceptions to the general hearsay rule, which allow the admission of specific categories of
hearsay. Tex. R. Evid. 803, 804. The reasoning for allowing exceptions is that certain types of out-of-court statements have been shown to be generally reliable and trustworthy. Chambers v.
Mississippi, 410 U.S. 284, 298-99, 93 S. Ct. 1038, 1047, 35 L. Ed.2d 297 (1973). Hearsay included
within hearsay is not excluded under the hearsay rule if each part of the combined statements
conforms with an exception to the hearsay rule provided in the Texas Rules of Evidence. Tex. R.
Evid. 805. 
            Appellant concedes that both exhibits “clearly fall within the hearsay exception of Tex. R.
Evid. 803(6),” records of regularly conducted activity. Therefore, we need only address whether
there is an exception for the second level of hearsay. At the second level, the State asserts the
medical records contained in State’s Exhibits 2 and 4 are admissible as exceptions to the hearsay
rule made for the purpose of medical diagnosis or treatment.


 This exception is based on the
rationale that a patient will provide accurate information to a doctor in order to receive effective
treatment. See Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.–Austin 1991, writ ref’d). 
            State’s Exhibit 2
            Looking first at Exhibit 2, Appellant complains the trial court erred in admitting the record
because it contains statements made by T.L. during her SANE exam that concerned Wardell’s
sexual assault of J.M. T.L. was five years old at the time of the exam. Where very young children
are responsible for relating information for purposes of medical diagnosis or treatment, the
presumption of reliability that forms the basis for this exception may break down if they do not
understand the importance of being truthful. See id. Even where an exception to the hearsay rule
exists, there must be an “indicia of reliability sufficient to ensure the integrity of the fact finding
process.” See Sneed v. State, 955 S.W.2d 451, 454 (Tex. App.–Houston [14th Dist.] 1997, pet.
ref’d). T.L. was very young at the time of the exam. She did not testify at trial. The record does
not contain any evidence to establish how T.L. acquired this information. No witnesses were
questioned about T.L.’s ability to appreciate the need to be honest in her comments from the June
2 exam. Therefore, we cannot say that the requisite “indicia of reliability” is present here.
            Moreover, although the exception created by Rule 803(4) is not limited to statements by
patients, the person making the statement must have an interest in proper diagnosis or treatment. 
Sandoval v. State, 52 S.W.3d 851, 856-57 (Tex. App.–Houston [1st Dist.] 2001, pet. ref’d). Parents
normally possess this interest in the well-being of their children. Id. In Floyd v. State, 959 S.W.2d
706, 712 (Tex. App.–Fort Worth 1998, no pet.), statements of the girlfriend of the victim’s father
to medical personnel were found to be within the 803(4) exception. However, in this instance, a
five-year-old child made a statement in her own exam about a sexual assault on her sister. We are
not willing to extend this “interest” premise normally applied to adults to the statement of a five-year-old child in this context. Therefore, we conclude that it was error to admit Exhibit 2. 
            State’s Exhibit 4
            Turning to Exhibit 4, Appellant asserts that we cannot know for certain who made the
various objectionable statements – J.M. or the babysitter, Willis. We agree. Because the medical
records are not clear as to who made the statements, we will assume that Willis made them. 
            Appellant argues that the hearsay exception concerning medical exams does not apply to
statements made by Willis. We iterate that the person making the statement must have an interest
in proper diagnosis or treatment. Sandoval, 52 S.W.3d at 856-57. Parents as well as grandparents
have been held to possess this interest in the well-being of their children. See id.; Ware v. State, 62
S.W.3d 344, 351 (Tex. App.–Fort Worth 2001, pet. ref’d) (stating that it can find “no reason to
apply this rule to parents, but not to grandparents”). Likewise, a babysitter may have an identical,
or an even greater motive than a parent or grandparent may have in obtaining a correct diagnosis
for a child. But there may be circumstances, especially in child sex abuse cases, in which the
statement is motivated by improper reasons such as wanting to shift the blame or a personal dislike
of the accused. Id. (citing United States v. Yazzie, 59 F.3d 807, 813 (9th Cir. 1995)) (Interpreting
identical Federal Rule of Evidence 803(4), the court found that the record did not reveal any motive
for the declarant’s statement other than a desire to care for the victim.). 
            In this case, the record reveals that Willis’s statement may have been motivated by improper
reasons. Testimony shows that Willis disapproved of Appellant’s lifestyle of living with various
men. Evidence also reveals that Willis had heard rumors that Appellant and Willis’s husband had
engaged in an affair. Although there was much evidence showing Willis’s genuine concern for
Appellant’s children, we cannot ignore these contradicting factors suggesting Willis’s statement
may have been motivated by improper reasons. Therefore, we conclude it was error to admit
Exhibit 4. 
Harm Analysis
            We reiterate that violation of an evidentiary rule resulting in the erroneous admission of
evidence is treated as nonconstitutional error. Hankton, 23 S.W.3d at 548. Therefore, it must be
disregarded unless it affects a substantial right. Tex. R. App. P. 44.2(b). A substantial right is not
affected unless the error had a “substantial and injurious effect or influence in determining the jury’s
verdict.” King, 953 S.W.2d at 271. 
            Appellant seems to assert that the critical dispute is whether Wardell sexually assaulted the
girls after March 2000. However, the crux of this case at trial was whether Appellant allowed her
children to be around Wardell after she had been informed in March 2000 that he had sexually
assaulted her daughters. The following testimonies concern this issue: 1) Willis testified Appellant
had Wardell back in her house and sleeping on her couch after March. 2) Wardell stated that
Appellant asked him to come to her house to help her with some chores. He said that he slept on
the couch. Wardell also said Appellant had given him rides to various places. 3) Detective Berreth
testified that Appellant admitted that she had allowed Wardell to stay at her house for “some time.” 
When Berreth asked Appellant why the safety plan had not been followed, Appellant said that she
was pregnant and she believed Wardell to be the father of the child. She also reiterated her disbelief
that Wardell had sexually assaulted the girls, and stated that the police had not given her conclusive
proof of the abuse. 4) Badger testified that Appellant indicated Wardell had been staying at the
house on the couch for about a week prior to the second outcry in May 2000. 5) J.M. testified that
she had been in the van with Wardell when Appellant drove him to the hospital. 6) Appellant
admitted that she asked Wardell to help her with some chores around the house, and that he had
done so. She stated he would sleep on the couch. 7) Appellant also admitted she gave Wardell a
ride to the hospital and that her children were in the van with them. 
            Wardell testified the last time he sexually assaulted the girls was January 2000. Appellant
had the opportunity to rebut any contrary inference. Additionally, the State did not overemphasize
the medical records from June 2. Any evidence of abuse after March 2000 is not necessary to prove
imminent danger to the children. Contreras, 54 S.W.3d at 905-06. Furthermore, the trial court
instructed the jury that it must decide the credibility and the weight of the evidence. We presume
that judicial admonishments to the jury cure any prejudicial effect. Bauder, 921 S.W.2d at 698. 
Based upon our review of the entire record, we conclude that the trial court’s error in admitting
Exhibits 2 and 4 did not have a substantial and injurious effect or influence on the jury’s verdict. 
Therefore, the error must be disregarded because it did not affect a substantial right. Appellant’s
third issue is overruled.
 
Lee’s Sexual Assault Confession Admitted During Punishment Phase
            In her fourth issue, Appellant asserts the trial court erred by allowing the State to introduce
evidence during the punishment phase from Bobby Lee (“Lee”), Appellant’s former live-in
boyfriend, who was convicted of sexually assaulting Appellant’s daughters. This evidence was a
written statement detailing the sexual assaults he committed on Appellant’s daughters. Appellant
objected as to relevance and Rule 403.


 The trial judge overruled Appellant’s objections, and Lee’s
statement was read into the record. Appellant complains that the jury was allowed to speculate that
Appellant may have borne some fault in this crime against her daughters. 
Applicable Law and Analysis
            Article 37.07, Section 3 of the Texas Code of Criminal Procedure addresses what evidence
may be offered during the punishment phase:
 
. . . [E]vidence may be offered by the state and the defendant as to any matter the court deems
relevant to sentencing . . . notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other
evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to
have been committed by the defendant, or for which he could be held criminally responsible,
regardless of whether he has previously been charged with or finally convicted of the crime or act. 
 
Tex. Code Crim. Proc. Ann. art. 37.07(3) (Vernon Supp. 2004) (emphasis added). 
            The trial court has broad discretion in determining admissibility of evidence at the
punishment phase of trial. Cooks v. State, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992). At the
punishment phase, the jury is concerned with evaluating a defendant’s background and character
independent of the commission of the crime on trial. Sparkman v. State, 580 S.W.2d 358, 360
(Tex. Crim. App. 1979). Generally, the jury is entitled to have before it all possible relevant
information about the accused. Id. “Relevant evidence” is evidence having any tendency to make
the existence of any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence. Tex. R. Evid. 401. Although relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. Tex. R. Evid. 403. We presume that relevant
evidence will be more probative than prejudicial. Santellan v. State, 939 S.W.2d 155, 169 (Tex.
Crim. App. 1997). Rule 403 requires the exclusion of evidence only when there exists a clear
disparity between the degree of prejudice of the evidence and its probative value. Jones v. State,
944 S.W.2d 642, 653 (Tex. Crim. App. 1996). 
            Appellant was convicted of endangering her children when she failed to keep them away
from Wardell after being told he had sexually assaulted her daughters. Lee’s statement detailing
the sexual assault on J.M. indicated that he assaulted the child while Appellant was at work. 
Contrary to Appellant’s assertion, his statement clearly indicates that Appellant did not participate
in the assaults or specifically approve of them. He claimed to assault the girls only when Appellant
was at work, which suggests she did not even know about the assaults. At worst, Lee’s testimony
shows Appellant’s history of failing to protect her children from men she relied upon for help.             The admissibility of evidence at the punishment phase of a non-capital felony offense is a
function of policy rather than relevancy. Mendiola v. State, 21 S.W.3d 282, 285 (Tex. Crim. App.
2000). The policy-based rationale for admitting extraneous offense evidence is the need for a jury
to have complete information before attempting to fashion an appropriate sentence. Id. The trial
court admitted this evidence to give the jury a complete picture of Appellant’s history. While this
evidence may have been prejudicial, it is only when there exists a clear disparity between the degree
of prejudice of the offered evidence and its probative value that Rule 403 is applicable. Jones, 944
S.W.2d at 653. In reviewing the record before us, we cannot say the probative value of Lee’s
confession was substantially outweighed by its prejudice. Therefore, the trial court did not abuse
its discretion by admitting the evidence during the punishment phase of trial. We overrule
Appellant’s fourth issue. 
 
Prosecutor’s Comment on Appellant’s Jury Election for Punishment
            In her fifth issue, Appellant complains that the prosecutor’s comment on Appellant’s jury
election falls outside the permissible bounds of jury argument. Specifically, Appellant points to the
following in the State’s closing argument:
 
[PROSECUTOR]: . . . And I’ll also suggest to you, as the defense counsel pointed out during voir
dire, that they’re going to you all for punishment. They’ve got the option, you see. They can either
go to the Judge or they can go to you all. Let me suggest to you that you shouldn’t be impressed by
that gesture because the reason they go to you is they think they can pull one over you in terms of
what’s the appropriate punishment. And the Judge, he’s seen these cases come and go over a number
of years. He knows what’s appropriate. But the defense chooses you because they want to put one
over on you. Don’t be impressed by that.
 
[DEFENSE COUNSEL]: Your Honor, I’m going to object to counsel asking the jury to hold against
the defendant a statutory right she has.
 
THE COURT: Ladies and gentlemen, this is argument. It is not evidence. Go ahead, Mr. Calhoon.
 
              [DEFENSE COUNSEL]: Judge, I’d like a ruling on my objection.
 
              THE COURT: Objection is overruled.
 
Applicable Law and Analysis
            Proper jury argument falls into four general categories: (1) summation of the evidence
presented at trial; (2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) a plea for law enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App.
2000) (citing McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992)). Even when
arguments exceed the boundaries of these permissible groups, they will not constitute reversible
error unless they are manifestly improper, violate a mandatory statute, or inject new, harmful facts
into the case. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); see also Reed v.
State, 991 S.W.2d 354, 362-63 (Tex. App.–Corpus Christi 1999, pet. ref’d). The remarks must
have been a willful and calculated effort on the part of the State to deprive an appellant of a fair and
impartial trial. Wesbrook, 29 S.W.3d at 115.
            The court of criminal appeals addressed a similar argument in Schulz v. State, 446 S.W.2d
872 (Tex. Crim. App. 1969). There, the prosecutor informed the jury that the appellant selected the
jury rather than the judge, who tried many cases, to assess the punishment. Id. at 875. “He was
in effect asking the jury not to be hoodwinked. The argument was not such as would convey to the
jury the wishes of the judge and if [sic] did not inform them of other evidence not introduced into
the case.” Id. at 876. Reviewing the facts of this case, we likewise conclude the prosecutor was
“in effect asking the jury not to be hoodwinked.” See id. 
            Similar argument was found in Brown v. State, 978 S.W.2d 708 (Tex. App.–Amarillo, pet. 
ref’d). But there, the prosecutor suggested that other pertinent information existed on the matter
that was unavailable to the jury. Id. at 713. The prosecutor also commented on that particular trial
judge’s stern attitude toward criminal conduct and law enforcement. Id. Upon appellate review,
the court considered this argument along with improper comments from the prosecutor comparing
the accused with Jeffrey Dahmer, Ted Bundy, and John Wayne Gacy. Id. at 713-14. The appellate
court held the prosecutor’s argument was error. Id. 
            In the instant case, the prosecutor’s argument did not convey to the jury that the judge
favored a particular punishment. The argument did not stray outside the evidence introduced in the
case. The prosecutor did not suggest that there was pertinent evidence on the matter that was
unavailable to the jury. Additionally, the judge instructed the jury that the prosecutor’s argument
was not evidence. The State continued punishment phase closing argument without further
elaboration. The jury had already found that Appellant endangered her children. The strength of
the evidence against Appellant was strong, fully supporting a conviction and the two-year maximum
sentence absent any possible prosecutorial misconduct. This argument does not constitute
reversible error. 
            In her Supplemental Brief, Appellant also claims that the prosecutor’s remarks violated the
Confrontation and Due Process Clauses of the Sixth and Fourteenth Amendments to the U.S.
Constitution. Appellant provides Thompson v. State as support for her argument. 89 S.W.3d 843
(Tex. App.–Houston [1st Dist.] 2002, pet. ref’d). There, the prosecutor invited the jury to speculate
about a matter that was not in evidence:
 
Ladies and gentlemen, there’s something important that I cannot tell you about concerning why you
should not give [appellant] anything less than ten years. There’s a very important reason but legally
I’m not allowed to tell you what it is but it is very important. Trust me on this. If you give
[appellant] less than ten years, you will find out later what’s going to happen.
 
Id. at 850. The court held that this argument was improper and violated due process. Id. at 851. 
But the facts in Thompson are not analogous to the facts in this case.
            Here, the worst thing that can be said about the prosecutor’s comment was that he was
implying that Appellant believed she could trick the jury into a lesser sentence. The statements did
not invite the jury to speculate about matters that were not before it. We do not see anything in the
prosecutor’s statement that causes us to conclude that Appellant’s due process or confrontation
rights were violated. No reversible error occurs unless the argument affects the accused’s
substantial rights. See Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). We hold that
the argument here is not of that character. Appellant’s fifth issue is overruled.
 
Prosecutor’s Comment on Failure to Testify
            In her sixth and final issue, Appellant complains that the prosecutor improperly commented
on Appellant’s failure to testify during closing argument. Specifically, she points to this portion
of the argument: 
 
What testimony have you heard from the defense that shows you that, the proof of that, that she’s
eligible for probation. Well, we heard from the Barnhart’s [sic] . . . . How would they know . . . ? 
So you heard from Joe Willis who works in our office. Well, he did run the TCIC and NCIC and it
doesn’t show that she has any convictions, but he also let you know that that’s not necessarily
conclusive that she doesn’t. So my argument is she’s not even been proven eligible for probation.
 
Appellant objected and the trial judge immediately sustained the objection. Appellant then moved
for a mistrial and the trial judge denied it. According to Appellant, the trial court’s ruling
constitutes reversible error. Generally, any error from an improper jury argument is cured when the
trial court instructs the jury to disregard the argument. McGinn v. State, 961 S.W.2d 161, 165
(Tex. Crim. App. 1998). Appellant failed, however, to ask for a jury instruction to disregard. 
Applicable Law and Analysis
            A comment on an accused’s failure to testify violates the accused’s state and federal
constitutional privileges against self-incrimination. Bustamante v. State, 48 S.W.3d 761, 764 (Tex.
Crim. App. 2001). It also violates article 38.08 of the Texas Code of Criminal Procedure, which
prohibits the State from commenting on or alluding to an accused’s failure to testify. Tex. Code
Crim. Proc. Ann. art. 38.08 (Vernon 1979). Such comments must be viewed from the jury’s
standpoint and the implication that the comment referred to the defendant’s failure to testify must
be clear. Id. at 765. It is not sufficient that the language might be construed as an implied or
indirect allusion. Id. The test is “whether the language used was manifestly intended or was of
such a character that the jury would necessarily and naturally take it as a comment on the
defendant’s failure to testify.” Id. 
            Where the argument points to a lack of evidence that only the defendant can personally
supply, it is error. Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). If the language
used can reasonably be construed as referring to the defendant’s failure to produce evidence other
than his own testimony, it is not improper. Banks v. State, 643 S.W.2d 129, 134-35 (Tex. Crim.
App. 1982). Here, the trial judge sustained the objection. However, we disagree that the comment
was improper. 
            In this case, the defense counsel urged the jury to give Appellant probation. A police
officer testified that he had checked the TCIC and NCIC records for any convictions listed for
Appellant. He stated that, while the information gained from TCIC and NCIC is not always correct,
he did not find any convictions for Appellant. In this context, the prosecutor’s argument could
reasonably have been construed as referring to the Appellant’s failure to produce evidence of her
eligibility for probation other than a computer system that is not completely reliable. The
prosecutor’s remarks did not naturally and necessarily refer to Appellant’s failure to testify. 
Therefore, the trial court did not abuse its discretion in denying the mistrial. Appellant’s sixth and
final issue is overruled.
Conclusion
            Having overruled each of Appellant’s issues, the trial court’s judgment is affirmed.
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
Opinion delivered May 28, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
(DO NOT PUBLISH)