ACCEPTED
03-14-00353-CR
6696450
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 10:46:31 AM
JEFFREY D. KYLE
CLERK

NO. 03-14-00353-CR

IN THE COURT OF APPEALS FOR THE THIRD APPELLATE

JUDICIAL DISTRICT OF TEXAS

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 10:46:31 AM
JEFFREY D. KYLE
Clerk

_____

KELLY KITA SHEFFIELD, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT OF COMAL COUNTY, TEXAS

Trial Court Cause No. CR2011-475
The Honorable Bruce Boyer, Judge Presiding

BRIEF FOR THE APPELLEE

Jennifer A. Tharp
Criminal District Attorney

By
Laura Burton Bates
SBN: 24035014
Assistant Criminal District Attorney
150 N. Seguin Avenue, Suite #307
(830) 221-1300
Fax (830) 608-2008
New Braunfels, Texas 78130
LKBTEXAS@GMAIL.COM
Attorney for the State

Oral argument is waived unless requested by the Appellant

i

## NAMES OF ALL PARTIES

Appellant – Kelly Kita Sheffield

Appellee – The State of Texas

**Attorneys for the Appellant**

Mr. Joseph Garcia
200 N. Seguin Avenue
New Braunfels, Texas 78130
At Trial and on Appeal

**Attorneys for the Appellee**
Mr. Clayton Hearrell
Assistant Criminal District Attorney
Mr. Ryan Vickers
Assistant Criminal District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
For the State at Trial

Ms. Laura Burton Bates
Assistant Criminal District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
For the State on Appeal

Ms. Jennifer A. Tharp
Criminal District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130

**INDEX**

Page

I.    NAMES OF ALL PARTIES                              ii

II.   INDEX                                             iii

III.  LIST OF AUTHORITIES                               v

IV.   NATURE OF THE CASE                                1

V.    STATEMENT OF FACTS                                3

VI.   SUMMARY OF THE ARGUMENT                           7

VII.  COUNTERPOINTS                                     8

**COUNTERPOINT NO. 1**                                 8
 State's Reply to Appellants' Point of Error One

THE EVIDENCE PRESENTED AT TRIAL PERTAINING TO THE APPELLANT'S KNOWLEDGE THAT SERGEANT CANTU WAS A LAW ENFORCEMENT OFFICER WAS LEGALLY SUFFICIENT TO SUSTAIN THE JURY'S VERDICT AS TO THE EVADING ARREST OR DETENTION WITH A VEHICLE.

ACCORDINGLY, APPELLANTS' ISSUE PRESENTED SHOULD BE OVERRULED AND THE JUDGMENT AFFIRMED.

**COUNTERPOINT NO. 2**                                 17
 State's Reply to Appellant's Point of Error Two

THE EVIDENCE PRESENTED AT TRIAL PERTAINING TO THE CHILD ENDANGERING CHARGE WAS LEGALLY SUFFICIENT TO SUSTAIN THE JURY'S CONVICTION FOR SUCH CHARGE CONSIDERING APPELLANT PURPOSELY PLACED HER TEN MONTH OLD BABY IN HER VEHICLE WHILE SHE EVADED ARREST OR DETENTION.

ACCORDINGLY, APPELLANTS' ISSUE PRESENTED IS WITHOUT MERIT AND SHOULD BE DENIED.

VIII.  CONCLUSION AND PRAYER                          22

IX.    CERTIFICATE OF SERVICE                         23

X.     CERTIFICATE OF COMPLIANCE                      23

# LIST OF AUTHORITIES

**CASE NAME**                                                                                          **PAGE**

Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992)…………….12

Bowden v. State, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982)………………9

Bradden v. State, WL 2830865, (Tex.App.—Waco, 2004 no pet.)
  (memo. op. not designated for publication)………………………………...11

Brooks v. State, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010)…………….9,17

Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007)………………10

Contreras v. State, 54 S.W.3d 898-905 (Tex.App.—Corpus Christi
  2001, no pet)………………………………………………………………...18

Devine v. State, 786 S.W.2d 268, 270 (Tex.Crim.App. 1989)………………18

Griffin v. State, 701 S.W.2d 958, 959 (Tex.App.—Ft. Worth
  1986, no pet.)………………………………………………………………...11

Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App, 2004)…………………...10

Hernandez v. State, 538 S.W.2d 127 (Tex.Crim.App. 1976)…………………..9

Hobbs v. State, 175 S.W.3d 777 (Tex.Crim.App. 2005)……………………..10

Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)…………………9,18

Jackson v. Virginia, 443 US 307, 319, 98 S.Ct. 2781,
  61 L.Ed.2d 590 (1979)……………………………………………………9,17

Laster v. State, 275 S.W.3d 512, 522 (Tex.Crim.App. 2009)………………...9,17

Lafoon v. State, 543 S.W. 2d 617 (Tex.Crim.App. 1976)……………………..9

Lide v. State, WL 2505631, (Tex.App.—Eastland, 2007 no pet.)
  (memo. op. not designated for publication)……………………...................11

Manrique v. State, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999)(en banc)…...10

Mayfield v. State, 219 S.W.3d 538, 541 (Tex.App.—Texarkana
    2007, no pet.)…………………………………………………...10

Millslagle v. State, 81 S.W.3d 895, 898 (Tex.App.—Austin
    2002, pet. ref'd)…………………………………………...18,20

Moreno v. State, No. 07-01-0441-CR, 2003 WL 21516575
    (Tex.App.—Amarillo 2003, no pet.)………………………………..20

Nixon v. State, 572 S.W.2d 699 (Tex.Crim.App. 1978)………………….…9

Redwine v. State, 3005 S.W.3d 360 (Tex.App. Houston
    [14th Dist.] 2010, pet. ref'd)……………………………………14,15

Rollerson v. State, 277 S.W.3d 718, 724 (Tex.Crim.App. 2007)……………...12

Wesbrook v. State, 29 S.W. 3d 103, 111(Tex.Crim.App. 2002)………………10

## RULES AND STATUTES        PAGE

TEX.PEN.CODE ANN. §22.04……………………………………………1,18

TEX.PEN.CODE ANN. §37.09 (a)………………………………………….1

TEX.PEN.CODE ANN. §38.04 ……………………………..………..1,10



| | |
|---|---|
| **KELLY KITA SHEFFIELD** | §IN THE COURT OF APPEALS |
| | § |
| **Appellant** | § |
| | § |
| | § |
| | § |
| **v.** | § FOR THE THIRD |
| | § |
| | § |
| | § |
| **THE STATE OF TEXAS** | § |
| **Appellee** | §APPELLATE DISTRICT OF TEXAS |

**ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT
OF COMAL COUNTY, TEXAS
Trial Court Cause No. CR2011-475**

To the Honorable Court of Appeals:

## NATURE OF THE CASE

Appellant was charged by indictment with one (1) count of tampering with physical evidence, a third degree felony, one (1) count of evading arrest or detention with a vehicle, a state jail felony, and one (1) count of endangering a child, also a state jail felony, all alleged to have been committed on March 17, 2011. TEX.PEN.CODE ANN. §§37.09(a), 38.04, 22.04.  (C.R. pp.5). Trial before a jury commenced on March 3, 2014, the Honorable Bruce Boyer, Judge presiding. Ultimately, on March 5, 2014, the Appellant was found guilty by the jury of evading arrest with a vehicle and endangering a child; she was acquitted on the count of tampering with physical evidence.  (R.R. Vol. 4, pp. 128).  The Appellant

elected the trial court to assess punishment, which was reset following the pronouncement of the verdict, so that a presentence investigation may be completed prior to formal sentencing. *Id* at 131.

After hearing further evidence from both sides during the punishment phase on May 22, 2014, the court ultimately sentenced Appellant to two years' incarceration in the State Jail Division of the Texas Department of Corrections, suspended and probated for a period of five years, and also imposed a $1,500 fine; this sentence was ordered on each count and will run consecutively. (RR. Vol. 5, pp. 61-2).

**STATEMENT OF FACTS**

On March 13, 2011, Child Protective Services (CPS) investigator Gina Bushey received a "referral" regarding Appellant, meaning CPS was notified of "allegations concerning drug use by the parents, domestic violence, mental instability, and threats of harm to self and the child," specifically concerning Appellant and her two young children. (R.R. Vol. 3, pp. 15). Bushey met personally with Appellant concerning these allegations, found them to be substantiated, and received a court order to remove Appellant's two children due to these concerns. *Id* at 16. The older child was living with her father, but the younger child, "L.S.," was still residing with Appellant and her husband at an apartment complex in Comal County. *Id* at 17.

On March 17, 2011, Investigator Bushey, while accompanied by Sergeant David Cantu of the New Braunfels Police Department, went to Appellant's apartment to present her with the court order and remove L.S. for her protection. *Id,* at 17-18. Bushey, along with CPS investigator Leah Amescua, observed Appellant's vehicle in the apartment complex parking lot, and confirmed as such by Appellant's husband. *Id* at 19. Bushey went to Appellant's apartment and knocked repeatedly; however, no one answered the door. *Id* at 20. As they knocked on Appellant's door, "we could hear somebody inside the apartment. It was very obvious that somebody was inside the apartment. We believed that it may be Ms.

3

Sheffield and the child, [L.S.] due to seeing her vehicle in the parking lot." *Id* at 21. Bushey then telephoned Appellant to inform her of the circumstances, but Appellant told Bushey that she was at work and couldn't speak with her at the moment. *Id.* Appellant gave Bushey an address for her place of work in San Antonio; however the San Antonio Police Department sent officers to that location and discovered both the address and the business were "nonexistent." *Id* at 22. Bushey telephoned Appellant again repeatedly; however Appellant kept disconnecting their calls, stating it was unprofessional to be on the phone while at work. *Id* at 23-24. Bushey, during these calls, informed Appellant that Bushey had a court order to remove Appellant's children for their protection. *Id* at 24. The phone exchanges and knocking on Appellant's apartment door continued for approximately one hour. *Id* at 26. During this hour, Sergeant Cantu never approached Appellant's apartment and waited downstairs, never coming "face to face" with Appellant at that time. *Id* at 52.

Bushey and Amescua went to speak with the apartment maintenance man while they were waiting for the events to play out. *Id* at 27. As they stood outside speaking with him, they saw Appellant get into her vehicle and drive out of the complex with a rear-facing car seat clearly visible in the backseat. *Id* at 27-29. Bushey and Amescua followed Appellant in Bushey's vehicle, while Sergeant Cantu pursued as well in his white truck equipped with emergency lights and siren

4

and a camper shell top. *Id* at 50. Appellant eventually turned onto Loop 337 and steadily pulled away from Bushey, who was driving the posted 45 miles per hour speed limit. *Id* at 30-32. Cantu followed approximately fifty feet behind Bushey. *Id* at 56. Appellant turned off of Loop 337 and into the gravel driveway of the "Rockin' R Campground". *Id* at 33. Bushey turned as well, with Sergeant Cantu following behind. *Id* at 35. Appellant turned around, in a "doughnut" manner, in the parking lot and began driving back towards Loop 337, passing Cantu face to face as she drove down the driveway. *Id*. Sergeant Cantu turned his truck around also and maneuvered to a position immediately behind Appellant's car, with his emergency lights flashing and siren blaring. *Id* at 35-37. As they left the campground parking lot, other vehicles on Loop 337 pulled over as Cantu's truck approached with the lights and sirens activated. (R.R. Vol. 3, pp. 139). Bushey stated she was driving the speed limit, but again Appellant and Cantu were quickly pulling away from her because they were driving faster than she. (R.R. Vol. 3, pp. 39). Eventually, Appellant lead Cantu back to her apartment complex. *Id*. As they approached the entrance to the complex, Officer Jace Hobbs arrived in his patrol car, with his lights and sirens blaring. *Id* at 153. Appellant drove into the complex through the main driveway, closely followed by Cantu and Hobbs. They continued to follow Appellant as she drove around the perimeter of the complex for nearly one minute, even passing the specific parking area for her apartment. *Id* at 155-7.

5

Finally, Hobbs ordered her three times to stop her vehicle and identified himself as "New Braunfels Police" over his loudspeaker; she finally parked in a spot well in the back of the complex. (R.R. Vol. 3, pp. 156-7).

After Appellant stopped her vehicle, the police made contact with her and observed L.S. buckled into her car seat in the back. *Id* at 42. Sergeant Cantu immediately spoke with Appellant, and got her out of her vehicle so the investigation could continue. After Cantu asked her why she didn't pull over despite seeing all the other vehicles pull over when they saw his truck approach, she stated that she didn't realize "that [the white truck] was an emergency vehicle." (State's Exhibit 48, 5:43 minute mark). While they are speaking, Cantu's badge is clearly seen hanging from his neck. (State's Exhibit 48, 5:54 minute mark). In Appellant's vehicle Bushey observed marijuana seeds, loose marijuana pieces, and stems on the front floorboard of Appellant's vehicle she had just been driving. *Id* at 42. As she spoke with Appellant, Bushey also observed marijuana stuck in between Appellant's teeth and inside her mouth. *Id* at 43. Officer Chad Simmons arrived at this point and unsuccessfully attempted to keep Appellant from swallowing marijuana he observed in her mouth. Bushey took custody of L.S. and Appellant was arrested for tampering with physical evidence, evading arrest or detention with a vehicle, and child endangering.

6

## SUMMARY OF THE ARGUMENT

The Appellant has presented two (2) points of error for the Court's review. As to the first point of error the State maintains that the evidence presented to the jury at trial is legally sufficient to sustain the conviction for evading arrest or detention in a vehicle. Appellant had already consciously decided to flee from two Child Protective Services investigators when she subsequently evaded from Detective Cantu; the jury was free to infer that because she was aware she was being pursued by CPS that she would also be aware that the person driving the white truck with the lights flashing was a law enforcement officer attempting to stop her. The first point is without merit and should be rejected.

As to the second complaint, the State argues having a ten month old baby in the vehicle while Appellant actively evaded from Detective Cantu and CPS, knowing their endgame was to remove Appellant's baby because of substantiated concerns for the baby's welfare, certainly endangers that child and places her in imminent danger during such evasion. The evidence presented was legally sufficient to uphold the jury's conviction for such charge.

For these reasons the State respectfully asks the court to overrule the Appellant's two points of error and affirm, in all things, the convictions rendered by the jury in this matter.

# COUNTERPOINT NO. 1

### State's Reply to Appellants' Point of Error One
### Appellant's Brief pp. 8-13

THE EVIDENCE PRESENTED AT TRIAL PERTAINING TO THE APPELLANT'S KNOWLEDGE THAT SERGEANT CANTU WAS A LAW ENFORCEMENT OFFICER WAS LEGALLY SUFFICIENT TO SUSTAIN THE JURY'S VERDICT AS TO THE EVADING ARREST OR DETENTION WITH A VEHICLE.

ACCORDINGLY, APPELLANTS' ISSUE PRESENTED SHOULD BE OVERRULED AND THE JUDGMENT AFFIRMED.

The Appellant contends in this point of error that evidence presented at trial as to whether Appellant knew Sergeant Cantu was a law enforcement officer when she was evading arrest or detention from him in her vehicle was legally insufficient to sustain the jury verdict because he was driving an unmarked truck with a camper shell and dressed in the more casual police attire. The jury listened to testimony of the witnesses, including extensive cross-examination of the State's witnesses by Appellant's attorney. They were aware Appellant was already in the process of absconding from two CPS investigators who had substantiated concerns for Appellant's child. In addition, the jury was privy to a video in which they could clearly see Appellant driving with Sgt. Cantu's truck directly behind her with his emergency lights and siren activated. The jury was free to believe whichever witnesses and testimony they found most credible. Considering the strength of the

evidence presented at trial, the jury's verdict of "guilty" as to the evading charge is legally sufficient and should be upheld on appeal.

When examining an issue for legal sufficiency, the court must review the evidence "in the light most favorable to the verdict to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Brooks v. State, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010). Under this standard, the jury's duty is to resolve any conflicts in the testimony, weigh all the evidence, and draw any reasonable inferences from all the facts presented. Jackson v. Virginia, 443 US 307, 319, 98 S.Ct. 2781, 61 L.Ed.2d 590 (1979), see also Laster v. State, 275 S.W.3d 512, 522 (Tex.Crim.App. 2009). Each fact does not in and of itself need to point directly to the guilt of the accused as long as the total cumulative force of all the incriminating circumstances is sufficient to support the conviction. Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

Reconciliation of evidentiary conflicts is a job solely relegated to the trier of fact. Bowden v. State, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982). The jury may believe some witnesses and refuse to believe others, just as it is free to accept portions of testimony of certain witnesses and reject other portions from the same witness. Lafoon v. State, 543 S.W. 2d 617 (Tex.Crim.App. 1976); *see also* Hernandez v. State, 538 S.W.2d 127 (Tex.Crim.App. 1976). *Accord* Nixon v.

9

State, 572 S.W.2d 699 (Tex.Crim.App. 1978). Where conflicting testimony is given, it is the exclusive province of the jury to reserve conflicts in the evidence. Wesbrook v. State, 29 S.W. 3d 103, 111 (Tex.Crim.App. 2002). After a guilty verdict is returned, it is presumed that the factfinder resolved any conflicting inferences supported by the record in favor of the prosecution. Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

To find someone guilty of evading arrest or detention with a vehicle, the prosecution must prove beyond a reasonable doubt that the Appellant fled, in a vehicle, from a person she knows is a peace officer lawfully attempting to arrest or detain her. TEX.PEN. CODE ANN. §38.04 (a),(b)(1). Intent is a fact question for the jury and may be inferred from other facts in the record, including the words, acts and conduct of the Appellant and from the circumstances surrounding the events in question. Manrique v. State, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999)(en banc); *see also* Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App, 2004). The crime of evading arrest or detention is a continuous crime. Hobbs v. State, 175 S.W.3d 777 (Tex.Crim.App. 2005). While speed, distance, and the duration of a pursuit may be factors in considering whether a defendant intentionally fled, no specific speed, distance, or duration is required to demonstrate intent if other evidence establishes intent. Mayfield v. State, 219 S.W.3d 538, 541 (Tex.App.—Texarkana 2007, no pet.). Moreover, the mere fact that an officer is in an unmarked car is not reason in

10

and of itself to render a conviction invalid. Other cases have examined a similar scenario and sustained such a conviction. <u>Bradden v. State,</u> WL 2830865, (Tex.App.—Waco, 2004 no pet.)(memo. op. not designated for publication), <u>Lide v. State</u>, WL 2505631, (Tex.App.—Eastland, 2007 no pet.)(memo. op. not designated for publication); <u>Griffin v. State</u>, 701 S.W.2d 958, 959 (Tex.App.—Ft. Worth 1986, no pet.).

In the case at hand, the only element in contention is whether Appellant knew Sergeant Cantu was a law enforcement officer when she evaded arrest or detention. (Appellant's brief, pp. 8). Appellant postulates that because Sergeant Cantu drove an unmarked pickup truck with a camper shell and was in a "polo" style shirt that bore the New Braunfels Police Department insignia that it is unreasonable to believe Appellant would have recognized him to be a peace officer during the evading arrest; thus the jury was could not discern or infer from the evidence and witnesses that Appellant knew Cantu was a law enforcement officer.

When the evidence is reviewed in the light most favorable to the verdict, the following facts are undisputed: (1) two CPS investigators were at Appellant's apartment to remove L.S. because of substantiated concerns for L.S.'s safety (R.R. Vol. 3, pp. 16, 22) , (2) Appellant was aware that Bushey was trying to reach her in order to serve her with the court order (R.R. Vol. 3, pp. 23-4), (3) Appellant had met Bushey previously and recognized her (R.R. Vol. 3, pp. 28), (4) Appellant had

11

lied twice that very day to Bushey by first telling her she was not at her apartment and second by giving a false place of employment and address in San Antonio (R.R. Vol. 3, pp. 22), (5) after Bushey knocked on Appellant's apartment door, Appellant took L.S. and drove away from her apartment complex (R.R. Vol. 3, pp. 29, 41), (6) Appellant turned around in a gravel parking lot and came face to face with Cantu (R.R. Vol. 3, pp. 35, 92), (7) Sergeant Cantu followed immediately behind Appellant's vehicle with his lights and sirens on, (8) Appellant did not stop her vehicle or pull out of the way despite seeing a truck with emergency lights flashing and the sirens activated behind her, (9) Sergeant Cantu is seen on video driving directly behind Appellant with his emergency lights activated (State's Exhibit 42, 2:25 minute mark, (10) Appellant does not stop until nearly one minute after a second police vehicle with lights flashing begins to follow her (State's Exhibit 42, 2:25- 3:23 minute mark), and (11) these events occurred during the day (R.R. Vol. 3, pp. 142). The jury was free to accept or reject any or all of this testimony and great deference is given to their fact finding. Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *see also*, Rollerson v. State, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007).

There is no dispute that Appellant was aware that she was being pursued by Bushey, and there is no controverting testimony that Appellant was not trying to dodge a court order to remove her children for their protection. No issue likewise

has been made that Sergeant Cantu was present to assist the CPS investigators. Sergeant Cantu drove an unmarked pickup truck with a camper shell during the events in question; however, the truck had working emergency lights and sirens which were clearly activated while he was following Appellant. Furthermore, when Appellant made the quick U-turn in the Rockin' R parking lot, she came face to face with Cantu and had to drive deliberately around his truck while his emergency lights were activated. (R.R. Vol. 3, pp. 93). Further, when Appellant drove on to the grassy area of the Rockin' R driveway to circumvent Cantu's truck, Cantu's badge around his neck and New Braunfels Police Department insignia on his shirt would have been visible. *Id.* He followed her, lights flashing and sirens now on, from the campground all the way back to the apartment complex. The jury heard testimony that other vehicles on both sides of the road pulled over or got out of the way when Cantu passed them with his lights and sirens on. (R.R. Vol. 3, pp. 94-5). Further, the jury heard testimony and personally saw on Hobbs' video that even after Appellant saw Hobb's patrol car with his lights and sirens on drive behind her and Cantu, she still failed to pull over despite passing numerous safe places in the parking lot. (R.R. Vol 3, pp. 98);(State's Exhibit 42, 2:22 – 3:22 minute mark). The only direct controverting the jury heard was on Officer Simmons' video when Appellant states that she didn't know Cantu's truck was an "emergency vehicle."   (State's Exhibit 48, 5:43 minute mark). The jury was free to

believe or disregard any testimony in whole or in part in deciding their verdict. It is also the province of the jury to evaluate witness' credibility and make such a determination. As such, it is certainly reasonable that the jury concluded, after evaluating all credibility and testimony they had been privy to, that Appellant actually was aware Cantu was a law enforcement officer and she knowingly evaded arrest or detention from him.

Appellant cites Redwine v. State for support of his argument. However, the facts in Redwine differ significantly from Appellant's case. Redwine v. State, 305 S.W.3d 360 (Tex.App.—Houston [14th Dist.] 2010 pet. ref'd). In Redwine, the appellant was driving on a rural road when officers in a patrol car passed him going the opposite direction. The officers turned around to pull the appellant over, but they never activated their emergency lights or siren. The appellant drove to his house and ran; when the officers got to the appellant's driveway, they shouted, "Sheriff!" The appellant eventually returned on foot to his car where he was arrested for evading arrest with a vehicle. In this case, only one officer testified regarding the appellant's failure to yield to the officers' authority, and that officer testified in an unconvincing manner. Thus, the Court of Appeals determined the evidence was legally insufficient to sustain a conviction for evading arrest with a vehicle because there was no evidence that appellant evaded arrest while he was in his vehicle.

Appellant argues that the holding in <u>Redwine</u> controls in her case, and posits that despite Cantu's activating the emergency lights and sirens on his pickup truck, this does not equate with a requisite show of authority that would have put Appellant on notice that a law enforcement officer was attempting to stop her. However, several significant differences are discerned from the facts in <u>Redwine</u> and the facts in Appellant's situation. First, the appellant in <u>Redwine</u> was not attempting to elude a separate authority figure (i.e. CPS) contemporaneous to the evading arrest or detention from a law enforcement officer. Second, the officers in <u>Redwine</u> never activated their emergency lights or sirens. Third, the officers made no show of authority in <u>Redwine</u> until the appellant ran away on foot. Fourth, in <u>Redwine</u>, a second patrol car with activated lights and sirens never appeared to attempt to stop the appellant. These additional facts in Appellant's case provide extra support for the jury's inferences and conclusions drawn that led them to convict Appellant for the charge of evading arrest or detention with a vehicle.

Appellant was already on notice that authorities were looking for her in regards to the situation with her children. It is thus a logical inference for the jury to have made that once she was already evading one set of authorities she would continue knowingly evade a second set of authorities. *See* (R.R. Vol. 3, pp. 142-3). Aside from that inference, the jury was aware Appellant had already lied to Bushey multiple times that morning, when she turned around in the Rockin' R driveway

15

she directly passed Cantu in the unmarked truck with the lights and sirens on and she saw his face, she continues to evade while he is behind her with his lights and sirens activated despite other motorists stopping for him, even after Hobbs' pulls in behind them with his lights and sirens activated Appellant still does not stop her vehicle for nearly another minute (R.R. Vol. 3, pp. 152). The jury was free to infer her intent from the facts as presented to them and all the surrounding circumstances. The jury was free to believe or disbelieve any portions, large or small, of testimony of the witnesses. It is not unreasonable to believe, after weighing all evidence and testimony, the jury concluded Appellant was guilty of evading arrest or detention in a vehicle because she knew Sergeant Cantu was a law enforcement officer.

Considering the strength of the evidence adduced at trial, coupled with the fact that the jury weighs the credibility of the witnesses and testimony and is free to accept or discount any portion of any witness' testimony, the evidence is legally sufficient to sustain the jury's verdict of guilty. For those reasons stated above the Appellant's Point of Error One should be overruled and the judgment of the trial court should, in all things, be affirmed.

# COUNTERPOINT NO. 2

**State's Reply to Appellant's Point of Error Two**
**Appellant's Brief pp. 14-16**

THE EVIDENCE PRESENTED AT TRIAL PERTAINING TO THE CHILD ENDANGERING CHARGE WAS LEGALLY SUFFICIENT TO SUSTAIN THE JURY'S CONVICTION FOR SUCH CHARGE CONSIDERING APPELLANT PURPOSELY PLACED HER TEN MONTH OLD BABY IN HER VEHICLE WHILE SHE EVADED ARREST OR DETENTION.
ACCORDINGLY, APPELLANTS' ISSUE PRESENTED IS WITHOUT MERIT AND SHOULD BE DENIED.

The Appellant contends in this point of error that the evidence is legally insufficient to sustain the jury's verdict as to the charge of child endangering. Appellant argues that the State's proof fails because, under the circumstances shown, she did not place her child in imminent danger because she did not knowingly evade arrest from a law enforcement officer. The jury was free to weigh the credibility of all witnesses and testimony; they could reasonably infer that evading arrests are inherently dangerous acts in which a ten month old baby would be in imminent danger from being inside the vehicle during the evading arrest.

When examining an issue for legal sufficiency, the court must review the evidence "in the light most favorable to the verdict to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Brooks</u>, 323 S.W.3d at 899. Under this standard, the jury's

duty is to resolve any conflicts in the testimony, weigh all the evidence, and draw any reasonable inferences from all the facts presented. Jackson, 443 US at 319, see also Laster, 275 S.W.3d at 522. Each fact does not independently need to point directly to the guilt of the accused as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Hooper, 214 S.W.3d at 13.

A person commits the crime of child endangering if "he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment. TEX.PEN.CODE ANN. §22.041(c). The statute does not require that person intend or even know that his conduct places the child in such imminent danger, only that he engages in conduct that places the child in imminent danger. Contreras v. State, 54 S.W.3d 898-905 (Tex.App.—Corpus Christi 2001, no pet). "Imminent" has been defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." Devine v. State, 786 S.W.2d 268, 270 (Tex.Crim.App. 1989). Merely the potential for danger in a situation is inadequate to rise to the level of imminent. Millslagle v. State, 81 S.W.3d 895, 898 (Tex.App.—Austin 2002, pet. ref'd).

Specifically in regards to the sufficiency of the evidence as to Appellant's

conviction for evading arrest or detention in a vehicle, the State relies on and reiterates its arguments and authorities made in its Response to Point of Error Number One, regarding legal sufficiency. The State maintains that the evidence presented to the jury at trial was clearly sufficient to sustain Appellant's conviction for such charge.

Appellant was actively evading detention with her vehicle while her youngest child was in the vehicle with her. She was speeding away from Bushey and driving erratically, taking a quick turnaround in a gravel parking lot to attempt to elude someone who was attempting to enforce a court order to protect Appellant's baby. (R.R. Vol. 3, pp 138). She continued to evade, even after a second patrol car began following her with emergency lights and sirens activated. She even purposely drove past her own parking area while driving away from both officers. Evading arrest in a vehicle is an extremely dangerous crime because of its inherent unpredictability; and Sergeant Cantu testified this was an imminently dangerous situation. (R.R. Vol. 3, pp. 139, 141). Not only was L.S. subject to the erratic driving of her mother in that vehicle, but she was also subject to the driving of any other motorist who may be attempting to avoid Appellant and the hot pursuit chase she was leading law enforcement on. L.S. was appropriately strapped into her car seat; however, that would be insufficient should anything happen while Appellant sped and made quick U-turns to evade law enforcement and CPS, all the

while subjecting her infant daughter to the presence and odor of marijuana. Bushey echoed this concern when she also testified that these events created a dangerous situation. (R.R. Vol. 3, pp. 72). It goes without saying that when a suspect has decided to actively flee authorities in a vehicle that danger is constantly present and the level of danger can rise with every passing minute and mile.

This is not a situation in which Appellant left her child unattended in the vehicle while she went into a store to use drugs (as in Millslagle), or in which Appellant even left the baby at home with other unattended children while she left the house and eventually was arrested (accord Moreno). Millslagle, 81 S.W.3d at 898; *accord* Moreno v. State, No. 07-01-0441-CR, 2003 WL 21516575 (Tex.App.—Amarillo 2003, no pet.)(mem. op., not designated for publication)(*defendant arrested for DWI, after leaving three children at home alone in custody of twelve year old child*). When Appellant made the conscious decision to place her baby in her vehicle, with marijuana, while she attempted to flee in a vehicle, she placed her baby in imminent danger because an active evading arrest or detention in a vehicle is a precarious situation in which anything could go wrong at any minute. The fact that no one was injured or no accidents occurred while Appellant was evading with her baby in the car does not excuse or limit the dangerous situation in which Appellant purposely placed her child.

Appellant was actively evading from representatives of multiple agencies.

20

She drove erratically and, by multiple accounts, took some evasive maneuvers. Evading arrest in a vehicle is considered dangerous for a legitimate reason; not only is one at the whim of the defendant driver of the vehicle who has already decided to get away at all costs, but one is also subject to the actions of other drivers in traffic who are trying to avoid what is transpiring. To subject a ten month old baby to such conditions is to place that baby in imminent danger. For those reasons stated above the Appellant's Point of Error Two should be overruled and the judgment of the trial court should, in all things, be affirmed.

## CONCLUSION AND PRAYER

Wherefore, premises considered, Appellee prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case.

**Respectfully submitted**

 **/s/ Laura Burton Bates**
**Laura Burton Bates**
Assistant Criminal District Attorney
Comal County Criminal District Attorney's Office
150 N Seguin Street
New Braunfels, Texas 78130
Phone: 830-221-1300
Fax: 830-608-2008
LKBTEXAS@GMAIL.COM
SBN: 24035014

## CERTIFICATE OF SERVICE

I, Laura Burton Bates, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this brief has been delivered to the following individual, electronically, this 28th day of August, 2015.

    **/s/ Laura Burton Bates**
    **Laura Burton Bates**

**Counsel for Appellant**

Mr. Joseph Garcia III
200 N. Seguin
New Braunfels, TX  78130
Joeg3@sbcglobal.net

## CERTIFICATE OF COMPLIANCE

I, Laura Burton Bates, hereby certify that this document was prepared in MS Word and it does not exceed the allowable length for an appellate brief pursuant to Tex. R. App. Pro. 9.4, as amended and adopted on November 30, 2012, by Order of the Texas Court of Criminal Appeals.  The approximate total of words in this document, as calculated by the word processing software, is 5684 words.

    **/s/ Laura Burton Bates**
    **Laura Burton Bates**